## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MUNEER AWAD

   Plaintiff / Petitioner

    v.

PAUL ZIRIAX, Agency Head, Oklahoma
State Board of Elections


THOMAS PRINCE, Chairman of the
Board, Oklahoma State Board of Elections


RAMON WATKINS, Board Member,
Oklahoma State Board of Elections;


SUSAN TURPEN, Board Member,
Oklahoma State Board of Elections

CIV-10-1186   M

CASE NO.:

HON.:



FILED

NOV 0 4 2010

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY _____ DEPUTY

## COMPLAINT SEEKING A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff, Muneer Awad, hereby moves the court for a temporary restraining order and preliminary injunction enjoining Defendants from certifying the election results for State Question 755.

Plaintiff's motion is supported by the Complaint filed with court and a Memorandum of Law submitted to the Court.

        Respectfully submitted,

## JURISDICTION

Jurisdiction in this Court is pursuant to 28 U.S.C Section § 1331 based on the presence of a federal question.

## PARTIES

1. Plaintiff, Mr. Muneer Awad, is a resident of Oklahoma City, Oklahoma where he lives with his wife

2. Plaintiff is Executive Director of the Council on American Islamic Relations-Oklahoma ("CAIR-OK).   In this capacity, Plaintiff works to empower Oklahoma's Muslims to become politically involved, enhance the understanding and acceptance of Islam, and defend the civil rights of Muslims and aggrieved persons.

3. Plaintiff has followed closely developments and media reports regarding State Question 755 which, if certified, would forbid courts from considering, among other things, "shariah law." He has directly encountered the amended text State Question 755 would enact repeatedly as well as media reports that comment on the amended text.

4. Defendants Thomas Prince, Ramon Watkins, and Susan Turpen are the entire membership of the Board for Oklahoma's State Board of Elections.  Defendants Prince, Watkins, and Turpen have the legal authority to vote to certify an election.  Election results have no legal effect until the aforementioned Defendants certify an election.

5.  Defendant Paul Ziriax is the Agency Head for Oklahoma's State Board of Elections. Defendant Ziriax has day to day control over the operations of the Board of Elections.

## PLAINTIFF'S FAITH

6.  Plaintiff is a practicing Muslim.  Plaintiff relies upon the two core sources of insight into his faith: the Quran and the recorded teachings of Islam's prophet.

7.  Plaintiff's faith is the motivation for much of what he does.  From greeting others with a smile to waking for the customary prayer at dawn, Plaintiff avails himself of the millennia of the evolving Islamic traditions grounded upon the Quran and Islam's prophetic teachings.

8.  Plaintiff's faith informs the character and content of his personal and professional relationships.  The Quran and Islam's prophetic teachings allow Plaintiff access to the practical morality contained therein regarding prescribed and proscribed conduct in innumerable circumstances.  Thus, when Plaintiff scrupulously attends to fairness in his business dealings, he acts from faith, having taken to heart guidance in Islam's prophetic teachings.

9.  Plaintiff  believes that his life is made richer through his adherence to Islam and that the lives of others are made no worse.

## BACKGROUND

10.  Oklahoma's Constitution provides a mechanism through which a resolution passing by majority vote in both the State House of Representatives and the State Senate can be referred to the Secretary of State for placement on the ballot of the next election. Oklahoma refers to these ballot initiatives as state questions.

11.  Subsequent to election day, if the State Board of Elections certifies that a majority of the votes cast on the state question were in favor of it being adopted, the contents of the state question become legally effective.

12.  For state questions proposing amendments to Oklahoma's constitution, the certification of the election results by the State Board of Elections is the moment at which the amendment becomes a part of the constitution.

## STATE QUESTION 755

13.  State Question 755 amends Article 7, Section I of Oklahoma's constitution. The initiative was described on the ballot to voters as a directive to state courts to "rely on federal and state law when deciding cases." The description states that the amendment would "forbid courts from considering or using international law." It would also "forbid courts from considering or using Sharia Law."

14.  The ballot's explanation of what the amendment means when it excludes "Sharia Law" from state courts indicates that the intention of the phrase was to demarcate a religious tradition.  "Sharia law" says  State Question 755 is "Islamic law."  While State

4

Question 755 described what "Sharia Law" is based on—the "Koran and the teaching of Mohammed"—it did not suggest what the actual content of the initiave's operative phrase, "Shariah Law," identified.

15. The text that State Question 755 places in Oklahoma's constitution forbids courts from considering Shariah Law twice. First, it forbids state courts from applying the law of other states, even when otherwise appropriate, if that law "include[s] Sharia Law." Second, the text uses broad language to forbid courts from "consider[ing] Sharia Law." No other religious tradition is mentioned.

16. State Question 755's chief proponents have repeatedly characterized the restriction it places on Shariah Law as a necessary bulwark against the invidious religious tradition it contains. The initiative's architects have variously referred to State Question 755 as a preemptive strike, a response to a looming threat, and as a much needed legal reinforcement to the Oklahoma's Judeo-Christian values.

17. Preliminary election results suggest that voters approved State Question 755. State Question 755 (hereinafter "Shariah Ban") will become a part of the constitution if the State Board of Elections certifies the results at its scheduled meeting on Tuesday, November 9, 2010.

## COUNT I: THE SHARIAH BAN WILL VIOLATE PLAINTIFF'S RIGHT TO POSSESS HIS FAITH FREE FROM A GOVERNMENT THAT CONDEMNS IT

18. Plaintiff fully incorporates by reference as though fully rewritten the allegations contained in all preceding paragraphs.

19. Once the Shariah Ban becomes a part of Oklahoma's constitution, Plaintiff will suffer official disapproval of his faith communicated to him by Oklahoma through the document that organizes the state's existence: the constitution

20. The Shariah Ban, because the text only mentions and restricts the religious traditions upon which Plaintiff draws his faith, will imply to Oklahomans that there is something especially nefarious about the Koran and the teaching of Mohammed that justifies its exclusion from state courts.

21. According to its creators, the Shariah Ban had a sectarian purpose and the illicit effect of discrediting Plaintiff's faith.

22. Implementation of the Shariah Ban will force state courts to take positions with respect to the religious doctrines pertinent to Plaintiff's faith. In order to exclude Shariah Law, a court must determine what that phrase does and does not include. This produces an excessive entanglement in spheres the Establishment Clause preserves for the Plaintiff.

## COUNT II: THE SHARIAH BAN IMPERMISSIBLY CONSTRAINS PLAINTIFF'S ABILITY TO EXERCISE HIS FAITH WITH RESPECT TO HIS ESTATE

23. Plaintiff fully incorporates by reference as though fully rewritten the allegations contained in all preceding paragraphs.

24. Plaintiff has a validly executed last will and testament.  The will has several provisions regarding bequests, burial instructions, and the division and assignment of Plaintiff's estate.  Many of these provisions direct the testator to specific verses in books that document the teaching of Mohammed.  In his will Plaintiff directs the testator of his estate to perform tasks, deliver bequests, and divide his estate in accordance with the guidance contained in the prophetic teachings to which he refers.

25.  Before November 9, 2010, Plaintiff could trust a court to ensure that the executor of his estate acts in accordance with his directions.  Courts regularly incorporate documents into a will when the reference and the documents satisfy certain rudimentary criteria.

26.  After November 9, 2010, no state court in Oklahoma will incorporate in the will the documents to which Plaintiff referred.  This is because those documents are "Shariah Law."  To incorporate into a will verses from a compendium of the teachings of Mohammed would surely require a judge to "consider...Shariah Law" which will soon be forbidden.

27. Because Plaintiff cannot know beforehand when he will die, the near certainty that, in a few ddays, no court will be willing to probate his will creates the imminent injury of dying intestate rather than with a valid, enforceable will.  The apprehension of this uncertainty is an injury itself.

28. Furthermore, Plaintiff no longer can have his will reflect his faith.  Any subsequent will, to be enforceable in state court, would have to eliminate not only the references to verses that might be subsumed by the phrase "Shariah Law" but also the neutral language that reflects the religious guidance on inheritance shares, bequests, and burial instructions.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff requests that the Court in the proposed form submitted by Plaintiff, schedule a hearing on Plaintiff's request for a preliminary injunction at the earliest possible date, and after that hearing, enter a preliminary injunction in the form proposed by Plaintiff.

Muneer Awad

101 NE 53rd Street, #3514

Oklahoma City, OK 73105

405-415-6851