# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUNEER AWAD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-10-1186-M |
| | ) |
| PAUL ZIRIAX, Agency Head, Oklahoma | ) |
| State Board of Elections; | ) |
| THOMAS PRINCE, Chairman of the | ) |
| Board, Oklahoma State Board of Elections; | ) |
| RAMON WATKINS, Board Member, | ) |
| Oklahoma State Board of Elections; | ) |
| SUSAN TURPEN, Board Member, | ) |
| Oklahoma State Board of Elections, | ) |
| | ) |
| Defendants. | ) |

## TEMPORARY RESTRAINING ORDER

On November 4, 2010, plaintiff filed a Complaint Seeking a Temporary Restraining Order and Preliminary Injunction. On November 8, 2010, the Court conducted a hearing on plaintiff's request for a temporary restraining order. Based upon the pleadings submitted and the argument of plaintiff and counsel for defendants at the hearing, the Court makes its determination.

I.  Introduction

State Question No. 755, which was on Oklahoma's November 2, 2010 ballot, provides:

> This measure amends the State Constitution. It changes a section that deals with the courts of this state. It would amend Article 7, Section 1. It makes courts rely on federal and state law when deciding cases. It forbids courts from considering or using international law. It forbids courts from considering or using Sharia Law.
>
> International law is also known as the law of nations. It deals with the conduct of international organizations and independent nations, such as countries, states and tribes. It deals with their relationship with each other. It also deals with some of their relationships with persons.

> The law of nations is formed by the general assent of civilized nations. Sources of international law also include international agreements, as well as treaties.
>
> Sharia Law is Islamic law. It is based on two principal sources, the Koran and the teaching of Mohammed.

Election results show that voters approved State Question 755. Once the Oklahoma State Board of Elections certifies the election results, the amendment set forth in State Question 755 will become a part of Oklahoma's constitution. The Oklahoma State Board of Elections has a scheduled meeting on November 9, 2010 to certify the November 2, 2010 election results.

On November 4, 2010, plaintiff filed the instant action, challenging the constitutionality of State Question 755. Specifically, plaintiff asserts that the ban on the state courts' use and consideration of Sharia Law violates the Establishment Clause and the Free Exercise Clause of the First Amendment to the United States Constitution. In his complaint, plaintiff, pursuant to Federal Rule of Civil Procedure 65, moves the Court for a temporary restraining order enjoining defendants from certifying the election results for State Question 755.

II.   Standing

Under Article III, federal courts have jurisdiction only to decide "Cases" and "Controversies." U.S. Const. art. III, § 2. An essential part of the case-or-controversy requirement is the concept that a plaintiff must have standing.

> A party has standing to pursue a claim in federal court only if: (1) it suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that injury is fairly traceable to the challenged action of the defendant rather than some third party not before the court; and (3) that injury is likely to be redressed by a favorable decision.

*Hydro Res., Inc. v. United States Envtl. Prot. Agency*, 608 F.3d 1131, 1144 (10th Cir. 2010) (internal quotations and citation omitted).

Plaintiff asserts that State Question 755's amendment to Oklahoma's constitution violates the First Amendment's Free Exercise Clause and Establishment Clause. Specifically, plaintiff asserts that the moment Oklahoma's constitution is amended, his First Amendment rights will be violated: (1) by Oklahoma's official condemnation of his religion/faith as reflected through the amendment to Oklahoma's constitution banning state courts' use or consideration of Sharia Law, (2) by the invalidation of his last will and testament which incorporates various teachings of Mohammed, and (3) by the excessive entanglement of the state courts with religion that would result from the amendment as the state courts in implementing the amendment would have to determine what is and is not encompassed in Sharia Law.

Having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds that plaintiff has made a preliminary showing that he will suffer an injury in fact. Specifically, the Court finds that plaintiff has alleged an invasion of his First Amendment rights – legally protected interests – which is both particularized and imminent. Additionally, the Court finds that plaintiff has shown that his alleged injury is fairly traceable to the challenged action of defendants. In fact, plaintiff specifically contends that once defendants certify the election results, Oklahoma's constitution will be amended and his First Amendment rights will be violated. Finally, the Court finds that plaintiff's alleged injury is likely to be redressed by a favorable decision. A finding by this Court that the amendment to Oklahoma's constitution set forth in State Question 755 is unconstitutional would clearly redress plaintiff's alleged injury. Accordingly, the Court finds that plaintiff has standing to bring the instant action.

III.     Ripeness

In order for a claim to be justiciable under Article III, it also must present a live controversy, ripe for determination, advanced in a "clean-cut and concrete form." *Renne v. Geary*, 501 U.S. 312, 322 (1991). A court's ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention. In short, [r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (internal quotations and citations omitted) (emphasis in original). Generally, a court "evaluate[s] the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Id.* (internal quotations and citation omitted).

Having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds that the instant action is ripe for determination. Specifically, the Court finds that plaintiff's claims are fit for judicial resolution. Election results show that voters approved State Question 755, and, thus, only certification of the election results is required for the amendment to take effect. Once the amendment is in place, any alleged violation of plaintiff's First Amendment rights would occur. The Court further finds plaintiff would suffer significant hardship if judicial consideration of plaintiff's claims were withheld.

IV.     Temporary Restraining Order

A party seeking a temporary restraining order must demonstrate: (1) there is a substantial likelihood of success on the merits; (2) he will suffer irreparable injury in the absence of injunctive relief; (3) the alleged injury to the movant outweighs the injury to the party opposing the motion; and (4) the injunctive relief would not be adverse to the public interest. *See Dominion Video*

*Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). Because a temporary restraining order "is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.*

    A.    <u>Likelihood of success on the merits</u>

As set forth above, plaintiff asserts that State Question 755's amendment to Oklahoma's constitution violates the First Amendment's Establishment Clause. When a claim asserting a violation of the Establishment Clause has been made, "[t]o pass constitutional muster, the governmental action (1) must have a secular legislative purpose, (2) its principal or primary effect must be one that neither advances nor inhibits religion, and (3) it must not foster an excessive government entanglement with religion." *Weinbaum v. City of Las Cruces, N.M.*, 541 F.3d 1017, 1030 (10th Cir. 2008) (internal quotations and citations omitted). The purpose and effect prongs of the test are interpreted in light of Justice O'Connor's endorsement test. "Under the 'endorsement test,' the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that religion or a particular religious belief is favored or preferred." *Id.* (internal quotations and citations omitted). Further, "[u]nder the [endorsement] test, the purpose prong of the . . . test asks whether government's actual purpose is to endorse or disapprove of religion. The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Am. Atheists, Inc. v. Duncan*, 616 F.3d 1145, 1156 (10th Cir. 2010).

Plaintiff contends that State Question 755's amendment to Oklahoma's constitution violates the Establishment Clause because it has a purpose and effect that is sectarian and because it necessitates excessive religious entanglement. Specifically, plaintiff asserts that State Question

755's origins establish that the amendment's actual purpose is to disapprove of plaintiff's faith. In support, plaintiff cites to one of the authors of State Question 755, Representative Rex Duncan's, statement that "America was founded on Judeo-Christian principles" and the amendment's purpose was to ensure that Oklahoma's courts are not used to "undermine those founding principles," and Representative Duncan's further statement that the purpose of the measure was to establish a legal impediment against the "looming threat" of Sharia Law in the United States.

Plaintiff further contends that because the amendment directs Oklahoma's state courts to make intrusive judgments regarding contested questions of religious belief or practice, the amendment excessively entangles Oklahoma in plaintiff's faith. Specifically, the amendment forbids state courts from considering Sharia Law in any of its proceedings. Plaintiff asserts that there is no single religious text that all Muslims accept as the exclusive source for what constitutes Sharia Law and, consequently, to comply with the amendment, state courts will be faced with determining the content of Sharia Law.

Having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds plaintiff has shown a substantial likelihood of success on the merits of his claim asserting a violation of the Establishment Clause. Specifically, the Court finds that plaintiff has made a preliminary showing that State Question 755's amendment does not have a secular purpose, that its primary purpose inhibits religion, and that it fosters an excessive government entanglement with religion.

Additionally, plaintiff asserts that State Question 755's amendment to Oklahoma's constitution violates the First Amendment's Free Exercise Clause. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious

beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993). Further, "[a]lthough a law targeting religious beliefs as such is never permissible, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest." *Id.* at 533 (internal citations omitted).

Plaintiff contends State Question 755's amendment is not facially neutral in that it uses language that is unequivocally and exclusively wedded to plaintiff's faith and on its face treats Islamic religious practices differently than any other religion. Specifically, plaintiff asserts that the amendment burdens adherents of no other religion with the inability to admit evidence pertaining to religious practice into state court in a context where such evidence would otherwise be relevant, and that the amendment would prevent plaintiff's will from being fully probated by a state court in Oklahoma because it incorporates by reference specific elements of the Islamic prophetic traditions. Plaintiff further contends the amendment is not justified by any compelling interest and is not narrowly tailored.

Having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds plaintiff has shown a substantial likelihood of success on the merits of his claim asserting a violation of the Free Exercise Clause. Specifically, the Court finds that plaintiff has made a preliminary showing that State Question 755's amendment is not facially neutral, discriminates against a specific religious belief, and prohibits conduct because it is undertaken for religious reasons. Additionally, the Court finds that plaintiff has made a preliminary

showing that State Question 755's amendment is neither justified by any compelling interest nor narrowly tailored.

B.   Irreparable injury

Plaintiff contends that he will be irreparably injured because he will suffer the loss of his First Amendment freedoms at the moment defendants certify State Question 755's election results. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, the Court finds that plaintiff has shown that he will suffer irreparable injury in the absence of injunctive relief.

C.   Balance of harms

Having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds that the alleged injury to plaintiff outweighs any injury to defendants. While the Court recognizes the importance of the will of the voters being carried out, the Court finds that any harm that would result from a slight delay in certifying the election results is minimal in comparison to the irreparable injury that occurs when an individual suffers the loss of his constitutional rights.

D.   Public interest

Finally, having reviewed plaintiff's complaint and memorandum, and having heard the arguments presented at the hearing, the Court finds that entry of a temporary restraining order enjoining defendants from certifying the election results for State Question 755 would not be adverse to the public interest. While the public has an interest in the will of the voters being carried out, the Court finds that the public has a more profound and long-term interest in upholding an individual's constitutional rights. As the Sixth Circuit has stated, "[i]t is always in the public

interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

V.  Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS plaintiff's request for a temporary restraining order. The Court, therefore, ENJOINS defendants from certifying the election results for State Question 755. This Temporary Restraining Order shall be in effect through the conclusion of the hearing on plaintiff's request for a preliminary injunction set for Monday, November 22, 2010 at 10:00 a.m.

**IT IS SO ORDERED this 9th day of November, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE