CASE NO. CIV-2010-1186-M

IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

MUNEER AWAD,

Plaintiff,

v.

PAUL AZIRIAX, Agency Head, Oklahoma State Board of Elections;
THOMAS PRINCE, Chairman of the Board, Oklahoma State Board of Elections;
RAMON WATKINS, Board Member, Oklahoma State Board of Elections;
SUSAN TURPEN, Board Member, Oklahoma State Board of Elections;

Defendants.

DEFENDANTS RESPONSE TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION [Doc. 1]

SCOTT D. BOUGHTON, OBA # 991
JANIS W. PRESLAR, OBA # 12443
Assistant Attorneys General
Oklahoma Attorney General's Office
313 N. E. 21st Street
Oklahoma City, Oklahoma  73105
Tele: (405) 521-3921   Fax: (405) 521-4518
Scott.Boughton@oag.ok.gov
Janis.Preslar@oag.ok.gov
*Attorneys for Defendants, Prince, Turpen, Watkins, and Ziriax*

November 16, 2010

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **ii - iv**

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION [Doc. 1]. . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

INTRODUCTION AND STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . **2**

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

1.   PLAINTIFF LACKS STANDING TO
     BRING THIS ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

2.   PLAINTIFF'S CLAIMS ARE NOT RIPE
     FOR ADJUDICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

3.   PLAINTIFF HAS NOT MET HIS BURDEN TO
     OBTAIN A PRELIMINARY INJUNCTION. . . . . . . . . . . . . . . . . . . . . . **6**

4.   STATE QUESTION 755 DOES NOT VIOLATE THE
     CLAUSE OF THE U.S. CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . **9**

     A.   STATE QUESTION 755 HAS A SECULAR
          LEGISLATIVE PURPOSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

     B.   THE PRINCIPAL OR PRIMARY EFFECT OF
          STATE QUESTION 755 NEITHER ADVANCES
          NOR INHIBITS RELIGION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

     C.   STATE QUESTION 755 DOES NOT RESULT IN
          AN EXCESSIVE ENTANGLEMENT BETWEEN
          THE STATE AND RELIGION. . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

5.   STATE QUESTION 755 DOES NOT VIOLATE THE
     FREE EXERCISE CLAUSE OF THE U.S. CONSTITUTION. . . . . . . **16**

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Beal v. Stern*,
184 F.3d 117 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
508 U.S. 520 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Corp. of the Presiding Bishop of the Church of Jesus Christ
    of Latter Day Saints v. Amos*,
483 U.S. 327 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Cosey v. Cherokee Nation Enterprises, LLC*,
212 P.3d 447 (Okla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Diaz v. Board of County Commissioners of Dade County*,
502 F. Supp. 190 (S.D. Flor. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Employment Div. v. Smith*,
494 U.S. 872 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Epperson v. Arkansas*,
393 U.S. 97 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Essence, Inc. v. City of Fed. Heights*,
285 F.3d 1272 (10th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grace United Methodist Church v. City of Cheyenne*,
451 F.3d 643 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lemon v. Kurtzman*,
403 U.S. 602 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 14, 15, 16

*Locke v. David*,
540 U.S. 712 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Lynch v. Donnelly,*
465 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9, 10**

*Maldonado v. Pataki,*
2005 WL. 3454714. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*Morgan v. McCotter,*
365 F.3d 882 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Mueller v. Allen,*
463 U.S. 388 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

*Nova Health Systems v. Edmondson,*
460 F.3d 1295 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*Nova Health Systems v. Gandy,*
416 F.3d 1149 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Okla., ex rel., OK Tax Comm'n v. Int'l Registration Plan, Inc.,*
455 F.3d 1107 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7**

*Rector v. City & County of Denver,*
348 F.3d 935 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Reynolds v. United States,*
98 U.S. 145 (1878). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

*Richards v. United States,*
369 U.S. 1 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

*Schrier v. Univ. of Colo.,*
427 F.3d 1253 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

*Southwest Voter Registration Education Project v. Shelley,*
344 F.3d 914 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **7, 8**

*Southwestern Bell Telephone Co. v. Okla. State Bd. Of Equalization,*
231 P.3d 638 (Okla. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

iii

*Summum v. Pleasant Grove City,*
483 F.3d 1044 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. American Trucking Ass'n, Inc.,*
310 U.S. 534 (1940). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Locke,*
471 U.S. 84 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wallace v. Jaffree,*
472 U.S. 38 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Weber v. Lockyer,*
365 F. Supp. 2d 1119 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Weinberger v. Romero-Barcelo,*
456 U.S. 305 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Whitmore v. Arkansas,*
495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## STATUTES

43 O.S. § 109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

84 O.S. § 44. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## OTHER

Okla. Const., art. 7, § 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

U.S. Const. amend. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUNEER AWAD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| PAUL ZIRIAX, Agency Head, Oklahoma | )   **Case No.: CIV-10-1186-M** |
| State Board of Elections; | ) |
| THOMAS PRINCE, Chairman of the Board, | ) |
| Oklahoma State Board of Elections; | ) |
| RAMON WATKINS, Board Member, | ) |
| Oklahoma State Board of Elections; | ) |
| SUSAN TURPEN, Board Member, | ) |
| Oklahoma State Board of Elections, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S
## MOTION FOR PRELIMINARY INJUNCTION [Doc. 1]

Defendants, Thomas Prince, Chairman of the Board, Oklahoma State Board of Elections, Susan Turpen, Board Member, Oklahoma State Board of Elections, Ramon Watkins, Board Member, Oklahoma State Board of Elections, and Paul Ziriax, Agency Head, Oklahoma State Board of Elections, hereby object to the Plaintiff's Motion For Preliminary Injunction. [Doc. 1].

Said Defendants will hereinafter be collectively referred to as "Election Board".

## INTRODUCTION AND STATEMENT OF THE CASE

On November 2, 2010, 70.08 per cent of the citizens of the State of Oklahoma approved State Question 755.[1]  Two days later the plaintiff filed the present action seeking to enjoin the Election Board from certifying the election result.

The state question voted upon and being challenged in the present action provided:

> STATE QUESTION NO. 755 LEGISLATIVE REFERENDUM NO. 355
>
> This measure amends the State Constitution.  It changes a section that deals with the courts of this state.  It would amend Article 7, Section 1.  It makes courts rely on federal and state law when deciding cases.  It forbids courts from considering or using international law.  It forbids courts from considering or using Sharia Law.  International law is also known as the law of nations.  It deals with the conduct of international organizations and independent nations, such as countries, states and tribes.  It deals with their relationship with each other.
> It also deals with some of their relationships with persons.  The law of nations is formed by the general assent of civilized nations.  Sources of international law also include international agreements, as well as treaties.  Sharia Law is Islamic law.  It is based on two principal sources, the Koran and the teaching of Mohammed.
>
> SHALL THE PROPOSAL BE APPROVED?  FOR THE PROPOSAL — YES
> AGAINST THE PROPOSAL — NO

State Question 755 was put on the ballot through the legislative adoption of Enrolled House Joint Resolution 1056.  Said resolution will amend Okla. Const., art. 7, § 1 by adding the following section.

---

[1]  As reported by the Oklahoma State Election Board.

C.  The Courts provided for in subsection A of this section, when exercising their judicial authority, shall uphold and adhere to the law as provided in the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and if necessary the law of another state of the United States provided the law of the other state does not include Sharia Law, in making judicial decisions.  The courts shall not look to the legal precepts of other nations or cultures.  Specifically, the courts shall not consider international law or Sharia Law.  The provisions of this subsection shall apply to all cases before the respective courts including, but not limited to, cases of first impression.

Plaintiff is bringing a facial challenge to the constitutionality of this proposed constitutional amendment.  Plaintiff argues that the amendment violates the Establishment Clause and the First Amendment Free Exercise Clause of the United States Constitution.  The Election Board will show that the proposed amendment is constitutional, that plaintiff lacks standing to bring this action, that the issue is not ripe for determination, and that plaintiff has not shown that he will suffer irreparable injury.

## **ARGUMENT AND AUTHORITY**

Although the Court has made preliminary findings that plaintiff has standing to bring this action and that his claims are ripe for judicial review, the Election Board respectfully asks the Court to reconsider its previous ruling, now that the Court has the benefit of the Board's briefing.

## 1.     **PLAINTIFF LACKS STANDING TO BRING THIS ACTION.**

In order to bring the present action plaintiff must make an initial showing that he is about to sustain an actual or imminent injury.

3

Foremost among the well-established elements of a justiciable controversy is the requirement that the plaintiff have standing to maintain the suit. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Z.J. Gifts D-4,* 311 F.3d at 1226.  "There are three requirements of Article III standing.  First, the plaintiff must suffer an injury in fact.  An injury in fact is an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, i.e., not conjectural or hypothetical."  *Essence, Inc. v. City of Fed. Heights,* 285 F.3d 1272, 1280 (10th Cir. 2002) (internal quotation marks omitted).  A plaintiff must also demonstrate that the harm complained of is fairly traceable to defendant's conduct and that a favorable ruling from the court would redress plaintiff's injury. *Id.*  Thus, a main focus of the standing inquiry is whether plaintiff has suffered a present or imminent injury, as opposed to a mere possibility, or even probability, of future injury. *See also Rector v. City & County of Denver,* 348 F.3d 935, 942-43 (10th Cir. 2003)

*Morgan v. McCotter*, 365 F.3d 882, 888 (10th Cir. 2004).

"A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas,* 495 U.S. 149, 155-156 (1990). Standing is determined as of the date of the filing of the Complaint. *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154-1155 (10th Cir. 2005).  Therefore, the question before this Court is whether on November 4, 2010, Muneer Awad faced a concrete and actual or imminent injury in fact.  Plaintiff's complaint that the proposed Constitutional Amendment limiting the use of Sharia law condemns his religion is a personal opinion, rather than a legal argument.  Plaintiff's claim that the Constitutional Amendment will invalidate his last will and testament is speculation.  Likewise, until the Amendment has been interpreted by

4

Oklahoma Courts, Plaintiff's fears of excessive entanglement between the courts and any established religion are also speculative.

## 2.    PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION.

Plaintiff filed the present action before Okla. Const., art. 7, § 1 was amended by State Question 755.  There has been absolutely no judicial construction of the proposed constitutional changes by any court of competent jurisdiction.  Plaintiff speculates that his rights will be adversely affected by the new law, but cannot articulate any concrete injury at the present time.

> Analysis of the prudential component of ripeness is guided by two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration."  *Thomas,* 220 F.3d at 1141, *citing Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

*Weber v. Lockyer*, 365 F.Supp.2d 1119, 1126 (N.D. Cal. 2005).

Plaintiff is asking this Court to completely veto the actions of seventy per cent of the Oklahoma electorate without any proof of direct harm.  In the case of *Diaz v. Board of County Commissioners of Dade County*, 502 F.Supp. 190 (S.D. Flor. 1980) an action was brought to enjoin the placement on the ballot of a proposed ordinance which would prohibit the expenditure of county funds for the purpose of utilizing any language other than English. In rejecting the plaintiff's request to stop the electoral process, the court noted that,

> The plaintiffs may have valid arguments if the proposed ordinance is passed by the voters of Dade County and if the officials of the county interpret the enacted ordinance in a manner which violates constitutional rights.  The Court today

> only decides that those questions are not ripe for adjudication
> and that, on these facts, the procedural machinery of the people's
> right to petition their government should not be stopped.
>
> It is clear that the proposition is not unconstitutional in its
> entirety and that the plaintiffs have not met the stringent
> standards required for the grant of a preliminary injunction.

*Diaz v. Board of County Commissioners of Dade County*, 502 F.Supp. at 194.

## 3.     PLAINTIFF HAS NOT MET HIS BURDEN TO OBTAIN A PRELIMINARY INJUNCTION.

"As a preliminary injunction is an extraordinary remedy, the right to relief must be

clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  To

obtain a preliminary injunction, plaintiff has the burden to establish that,

> (1) [he or she] will suffer irreparable injury unless the injunction
> issues; (2) the threatened injury ... outweighs whatever damage
> the proposed injunction may cause the opposing party; (3) the
> injunction, if issued, would not be adverse to the public interest;
> and (4) there is a substantial likelihood [of success] on the
> merits.

*Id*.  Preliminary injunctions are intended "merely to preserve the relative positions of the

parties until a trial on the merits can be held."  *Summum v. Pleasant Grove City*, 483 F.3d

1044, 1048 (10th Cir. 2007).  Because of this purpose and the extraordinary nature of

preliminary injunctions, movants must meet "a heightened standard" when seeking one of

the three historically disfavored injunctions: "(1) preliminary injunctions that alter the status

quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the

movant all the relief that it could recover at the conclusion of a full trial on the merits."

*Summum*, 483 F.3d at 1048 (citations and quotations omitted).  When a movant seeks one of

6

these historically disfavored forms of injunction, the movant must "make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms."[2]  *Id.*  The preliminary injunction requested by plaintiff is subject to heightened scrutiny because plaintiff seeks to alter the status quo and because the preliminary injunction he seeks would grant the same relief he ultimately seeks from a final ruling on the merits. Additionally, plaintiff is seeking to stay an important governmental function.

> However, when a party seeks an injunction to stay governmental action taken in the public interest pursuant to a statutory scheme, the more rigorous showing of likelihood of success on the merits is required.  *See Beal v. Stern,* 184 F.3d 117, 122 (2d Cir. 1999).

*Maldonado v. Pataki*, 2005 WL 3454714, *2.

> Even if the "balance of hardships" standard were applicable to this case, this Court would not grant preliminary injunctive relief.  "[A] federal court cannot lightly interfere with or enjoin a state election," *Southwest Voter,* 344 F.3d at 918, and this Court is not persuaded by the argument that to enjoin the certification of this election would do no more than preserve the status quo.  Rather, it would frustrate the will of the legislature, as expressed in Chapter 240, and the will of the voters who cast ballots in the general election.

*Maldonado v. Pataki*, 2005 WL 3454714, FN3, *6.

---

[2]  Generally, if a movant makes a strong showing on the first three elements, a relaxed standard is applied to the success on the merits element.  *Okla., ex rel., OK Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 113 (10th Cir. 2006).  However, where, as here, a movant seeks to enjoin the enforcement of a statute, the movant "must meet the traditional 'substantial likelihood of success' standard."  *Nova Health Systems v. Edmondson*, 460 F.3d 1295, 1298 n.6 (10th Cir. 2006).  The relaxed standard is also inapplicable here because plaintiff seeks a historically disfavored form of injunction.

In the case of *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914 (9th Cir. 2003) a voter advocacy group sought to enjoin the California Secretary of State from using "punch-card" balloting machines.  Plaintiffs unsuccessfully claimed that the balloting machines violated the Equal Protection Clause of the U.S. Constitution and Section 2 of the Voting Rights Act.

> We therefore must determine whether the district court abused its discretion in weighing the hardships and considering the public interest.  In this case, hardship falls not only upon the putative defendant, the California Secretary of State, but on all the citizens of California, because this case concerns a statewide election.  The public interest is significantly affected.  For this reason our law recognizes that election cases are different from ordinary injunction cases.  *See, e.g., Reynolds v. Sims,* 377 U.S. at 585, 84 S.Ct. 1362.  Interference with impending elections is extraordinary, *id.,* and interference with an election after voting has begun is unprecedented.

*Southwest Voter Registration Education Project v. Shelley*, 344 F.3d at 919.

The public interest lies in ensuring that State Question 755 takes effect as intended by the voters of the State of Oklahoma.

> In exercising their sound discretion, courts of equity should pay particular regard for the public consequences of employing the extraordinary remedy of injunction.  Thus, the Court has noted that "[t]he award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff," and that "where an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest, withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff.

8

*Weinberger v. Romero-Barcelo,* 456 U.S. 305, 311-312 (1982).  No injunction bond can prevent the harm to the public interest which plaintiff's proposed preliminary injunction would cause.

4.    **STATE QUESTION 755 DOES NOT VIOLATE THE ESTABLISHMENT CLAUSE OF THE U.S. CONSTITUTION.**

The First Amendment of the U.S. Constitution states that "Congress shall make no law respecting an establishment of religion".  U.S. Const. amend. I.  In determining if the government has violated the Establishment Clause, the Supreme Court applies a three-prong test, first adopted in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971).  "First, the statute must have a secular legislative purpose; second its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an 'excessive government entanglement with religion.' " *Id.* at 612-13 (internal citations omitted).  If a government action satisfies all three of the *Lemon* prongs, it is constitutional.  State Question 755 satisfies all three prongs of the *Lemon* test and, therefore, it does not violate the federal constitution.

A.    **STATE QUESTION 755 HAS A SECULAR LEGISLATIVE PURPOSE.**

For plaintiff to prevail on purpose grounds, he must demonstrate that State Question 755 was "motivated wholly by religious considerations." *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984).  He must also show that those considerations were constitutionally impermissible.  A government's purpose need not "be unrelated to religion - that would amount to a requirement that the government show a callous indifference to religious groups,

and the Establishment Clause has never been so interpreted." *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter Day Saints v. Amos,* 483 U.S. 327, 335 (1987) (internal citation omitted). Instead, the Court's purpose test "aims at preventing the relevant governmental decisionmaker … from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters." *Id.*

The State, on the other hand, needs only a single legitimate secular purpose for the measure to satisfy this requirement. *See Lynch,* 465 U.S., at 681 n.6. The Court's inquiry into the State's purposes is by design deferential and limited, *see Wallace,* 472 U.S., at 74-75 (O'Connor, J., concurring in the judgment), and the Court is reluctant to attribute unconstitutional motives to the State, *see Mueller v. Allen,* 463 U.S. 388, 394-95 (1983). Even in the absence of any expressed secular purpose, the State should not be deemed to have acted with an improper purpose unless "it is beyond purview that endorsement of religion or a religious belief 'was and is the [State Question's] reason for existence.' " *Wallace,* 472 U.S., at 75 (O'Connor, J., concurring in the judgment) (*quoting Epperson v. Arkansas,* 393 U.S. 97, 108 (1968)).

Plaintiff relies on statements made in the press by the authors of the resolution to put State Question 755 to a vote of the people as evidence the measure does not have a secular legislative purpose. Consideration of such media statements do not constitute legislative history and are improper.[3]

--------

[3] In federal enactments, legislative history consists of statements made in floor
(continued...)

The Supreme Court has held there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. American Trucking Ass'n, Inc.*, 310 U.S. 534, 543 (1940). "The legislative purpose of a bill is expressed by the ordinary meaning of the words used." *United States v. Locke*, 471 U.S. 84, 95 (1985), *quoting Richards v. United States*, 369 U.S. 1, 9 (1962).

In order to determine if State Question 755 has a secular legislative purpose the Court must derive the intent of the measure from its plain and ordinary language. *Id.* The Court must consider the text of the Constitutional measure, not just the ballot title. *Southwestern Bell Telephone Co. v. Okla. State Bd. Of Equalization*, 231 P.3d 638, 642 (Okla. 2009). In granting the Temporary Restraining Order, the Court considered only the ballot title of State Question 755, and did not consider the text of the actual provision to be added to Oklahoma's Constitution. Enrolled House Joint Resolution 1056, enacted by the Second Regular Session of the 52nd Legislature of the State of Oklahoma, provided for the following amendment to be added to Oklahoma's Constitution upon approval by the people of the State:

---

[3](...continued)
debates, in committee reports, and in committee testimony during the process of enacting a law. *See, e.g.* Antonin Scalia, Matter of Interpretation 17, 29 (Amy Gutmann, ed., 1997). Oklahoma has no system for preserving legislative history like the federal congressional system of receiving information and recommendations submitted in congressional hearings and reporting on bills. *Cosey v. Cherokee Nation Enterprises, LLC*, 212 P.3d 447, *concurring op. at fn. 10* (Okla. 2009). "[I]t is simply incompatible with democratic government...to have the meaning of a law determined by what the lawgiver meant, rather than by what the lawgiver promulgated.... Men may intend what they will; but it is only the laws that they enact which bind us." Scalia, *supra.*

> The Courts provided for in subsection A of this section, when exercising their judicial authority, shall uphold and adhere to the law as provided in the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and if necessary the law of another state of the United States provided the law of the other state does not include Sharia Law, in making judicial decisions. The courts shall not look to the legal precepts of other nations or cultures. Specifically, the courts shall not consider international law or Sharia Law. The provisions of this subsection shall apply to all cases before the respective courts, including, but not limited to, cases of first impression.

Enrolled House Joint Resolution 1056, § 1(C).

The plain and ordinary language of the above-quoted measure demonstrates the principle purpose of the measure is to ban Oklahoma courts from looking to the precepts[4] of other nations[5] or cultures.[6] The reference to "international law or Sharia law" is merely a subset of the reference to "precepts of other nations or cultures." The measure bans, equally,

---

[4] The ordinary meaning of "precept" is "a command or principle intended as a general rule of action". Webster's Third New International Dictionary, p 1783 (1993).

[5] The ordinary meaning of "nation" is "a community of people composed of one or more nationalities and possessing a more or less defined territory and government". Webster's Third New International Dictionary, p 1505 (1993).

[6] The ordinary meaning of "culture" is "the body of customary beliefs, social forms, and material traits constituting a distinct complex of tradition of a racial, religious, or social group". Webster's Third New International Dictionary, p 552 (1993).

12

*all* laws from other nations or cultures, including, ***but not limited to*** international law and Sharia law.[7]

The amendment to Oklahoma's Constitution is merely a choice of law provision, favoring the law of the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and the law of other states of the United States. This is a secular legislative purpose, as required by the first prong of the *Lemon* test. State Question 755 therefore satisfies the first prong of the *Lemon* test.

**B.    THE PRINCIPAL OR PRIMARY EFFECT OF STATE QUESTION 755 NEITHER ADVANCES NOR INHIBITS RELIGION.**

The second prong of the *Lemon* test requires the principal effect of the government action to be secular. *Lemon v. Kurtzman*, 403 U.S. at 612-13. The second prong is satisfied

---

[7] Central to Sharia law is the Qur'an, the revealed word of God, as spoken by the angel Gabriel to Muhammed, the sayings (hadith) and conduct (sunnah) of Muhammed while he lived among people, as well as, the teachings of learned jurists as they commented on the law. B. Lavin-McEleney, "Criminality and Democracy in Ancient Systems of Law," 44 No. 6 Criminal Law Bulletin (Winter, 2008). Muhammed was a successful merchant in the city of Mecca in 610 C.E. when he heard the voice of the angel Gabriel. N. Oman, "Bargaining in the Shadow of God's Law: Islamic Mahr Contracts and the Peril of Legal Specialization", 45 Wake Forest 579, 588 (Fall, 2010). The result was the first suras (chapters) of what became the Qur'an. *Id.* In 622 C.E., Muhammed migrated from Mecca and became not only a spiritual leader, but also a civic and military leader. *Id.* The portions of the Qur'an received during this period frequently dealt with matters of civic administration-matters of law. *Id.* Sharia law is not just religious, but necessarily political, governing all public and private activities of individuals. It regulates everything from politics, economics, and banking, to the role of women, dress codes, dietary laws, and freedom of speech. K. Ward-Lambert, "The Refugee Experience, A Legal Examination of the Immigrant Experiences of the Sudanese Population, 33 Nova L. Rev. 661 (Summer, 2009).

13

so long as the government does not prefer one religion over another.  *Wallace v. Jaffree*, 472

U.S. 38, 53 (1985).  State Question 755 does not have the effect of preferring one religion

over another.  The measure requires Oklahoma courts to apply the law of the United States

Constitution, the Oklahoma Constitution, the United States Code, federal regulations

promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules

promulgated pursuant thereto, and the laws of other states of the United States.  The measure

bans state courts from applying the law of other nations and cultures, regardless of what faith

they may be based on, if any.

Several nations are governed by Sharia Law and State Question 755 rightly includes

Sharia Law as law based on the precepts of other nations and cultures.[8]  State Question 755

is merely a choice of law provision for Oklahoma courts.  State Question 755 does not have

a primary effect of inhibiting plaintiff's practice of Islam.  State Question 755 therefore

satisfies the second prong of the *Lemon* test.

---

[8]  Saudi Arabia's legal system is based on Sharia law.  K. Scully, "Blocking Exit, Stopping Voice: How Exclusion from Labor Law Protection Puts Domestic Workers at Risk in Saudi Arabia and Around the World", 41 Colum Hum. Rts. L. Rev. 825 (Spring, 2010). Saudi law requires courts must "apply the rule of Islamic Shari'ah in the cases that are brought before them...."  *Id.*  Sudan is ruled by military regimes that have governed the country under strict adherence to Sharia law.  K. Ward-Lambert, "The Refugee Experience, A Legal Examination of the Immigrant Experiences of the Sudanese Population, 33 Nova L. Rev. 661 (Summer, 2009).  Kano, a state in the nation of Nigeria, adopted Sharia law in 1999.  L. Polgreen, "Nigeria Turns from Harsher Side of Islamic Law," N.Y. Times, Dec. 1, 2007 at A1.  Similarly, Aceh Province, in the nation of Indonesia, has implemented Sharia Law as its governing law.  D. Austin, P. Johnson, & M. Wojcik, "Sexual Orientation and Gender Identity," 44 Int'l. Law. 547 (Spring 2010).

### C.   STATE QUESTION 755 DOES NOT RESULT IN AN EXCESSIVE ENTANGLEMENT BETWEEN THE STATE AND RELIGION.

The third prong of the *Lemon* test requires that a law not result in an excessive entanglement between the State and religion. *Lemon v. Kurtzman*, 403 U.S. at 612-13. State Question 755 satisfies this prong. State Question 755 not only does **not** cause unnecessary entanglement between the State and religion, State Question 755 **ensures** there is no entanglement between the State and a particular faith by preventing courts from considering **all** laws from other nations and cultures, including nations and cultures governed by faith-based laws.

For example, unlike Oklahoma State law, 43 O.S. § 109, that considers the best interests of the child, Sharia law has no such emphasis. K. Uhlman, "Overview of Shari'a and Prevalent Customs in Islamic Societies-Divorce & Child Custody," §1.0, http:www.expertlaw.com/library/family_law/islamic_custody.html (January, 2004). Sharia law considers the father the "natural guardian" of his children, with the paternal grandfather as the second in line for guardianship.[9] *Id.* To consider Sharia law in a child custody matter in the context of a divorce between two Saudi Arabian citizens who reside in Oklahoma would result in an undesirable entanglement between the Oklahoma family courts and Sharia faith-based law.

_____

[9]  The mother may maintain physical custody, but must give up custody to the father when a boy is between ages seven and nine, and when a girl reaches puberty. K. Uhlman, "Overview of Shari'a and Prevalent Customs in Islamic Societies-Divorce & Child Custody," § 1.0, http:www.expertlaw.com/library/family_law/islamic_custody.html (January, 2004).

Because State Question 755 bans Oklahoma courts from considering the laws of other nations and cultures, including those that are faith-based, State Question 755 actually *prevents* excessive entanglement between the State and religion.  The third prong of the *Lemon* test is therefore satisfied because State Question 755 does not cause an excessive entanglement between the State and religion.

5.      **STATE QUESTION 755 DOES NOT VIOLATE THE FREE EXERCISE CLAUSE OF THE U.S. CONSTITUTION.**

The First Amendment states that "Congress shall make no law ... prohibiting the free exercise [of religion]."  U.S. Const. amend. I.  "While the First Amendment provides absolute protection to religious thoughts and beliefs, the free exercise clause does not prohibit governments from validly regulating religious conduct."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006) (*citing Reynolds v. United States*, 98 U.S. 145, 164, 25 L.Ed. 244 (1878)).

"Neutral rules of general applicability normally do not raise free exercise concerns even if they incidentally burden a particular religious practice or belief."  *Id.* (*citing Employment Div. v. Smith*, 494 U.S. 872, 879(1990) (stating that the Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)" (internal quotation omitted))).  A law is neutral so long as its object is something other than the infringement or restriction of religious practices.  *Id.* (*citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 546 (1993)).

"Thus, a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Id.*

"On the other hand, if a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest." *Id.* Therefore, the first step in analyzing plaintiff's Free Exercise Clause claim is to determine "which level of scrutiny to apply." *Id.*

State Question 755 does not burden plaintiff's religious practices. The measure does not infringe upon or restrict plaintiff's or anyone else's religious practices. The measure is merely a choice of law provision, applicable to the courts of Oklahoma. It neither favors nor discriminates against any religion. The measure bans Oklahoma courts from considering the laws of other nations and cultures, regardless of the religious origins of such laws, if any. It is therefore a neutral law of general applicability and does not raise free exercise concerns.

Plaintiff speculates at page 16 of his Memorandum in Support of Plaintiff's Motion for Temporary Injunction that, "the Shariah ban prevents Plaintiff's will from being fully probated by a state court in Oklahoma, because it incorporates by reference specific elements of the Islamic prophetic traditions." This is pure conjecture at this point because no Oklahoma court has been given the opportunity to construe plaintiff's will. This illustrates the problem with trying to adjudicate this matter before it ripens into a legitimate controversy.

17

Nevertheless, contrary to plaintiff's assertion, the ban on Oklahoma courts applying Sharia law does not prevent plaintiff's will from being fully probated by a state court in Oklahoma, even if it incorporates by reference specific personal preferences plaintiff may have, based upon his faith tradition.   Plaintiff can recite in his will all kinds of personal preferences based on Sharia law.   Oklahoma courts will likely honor those personal preferences–this does not require the application of Sharia law by an Oklahoma court any more than a Christian stipulating in his will that he wants a Christian burial requires the application of "Christian law".   A probate court simply settles a decedent's estate, ensuring that outstanding claims against a decedent are settled, and facilitating the distribution of property according to the decedent's wishes and State law.

If plaintiff sets forth in his will a preference that conflicts with Oklahoma law, then state law will prevail. For example, if Sharia law so provided, plaintiff could not provide in his will for his wife to receive none of the property they acquired during their marriage. Oklahoma law would override the provisions of plaintiff's will and his wife would receive her statutory share, pursuant to 84 O.S. § 44.

The analysis of State Question 755 under the Free Exercise Clause is similar to that applied by the court in *Locke v. David*, 540 U.S. 712 (2004).  In *Locke*, a college student sued state officials alleging a state statute prohibiting state aid to any post-secondary student pursuing a degree in theology violated the Free Exercise Clause.  The state had established the Promise Scholarship Program to assist academically gifted students with postsecondary education expenses.  However, in accordance with the State's Constitution, the students

18

could not use the scholarship to pursue a degree in devotional theology to become clergy.

The plaintiff argued that the program was presumptively unconstitutional because it was not

facially neutral with respect to religion. *Id.* at 720. The court said:

> In the present case, the State's disfavor of religion (if it can be called that) is of a far milder kind. It imposes neither criminal nor civil sanctions on any type of religious service or rite. It does not deny to ministers the right to participate in the political affairs of the community. And it does not require students to choose between their religious beliefs and receiving a government benefit. The State has merely chosen not to fund a distinct category of instruction.
>
> *                    *                    *
>
> The State's interest in not funding the pursuit of devotional degrees is substantial and the exclusion of such funding places a relatively minor burden on Promise Scholars.

*Id.* at 720 (internal citations and footnotes omitted).

Similarly, in the present case, State Question 755 does not burden plaintiff's religious

practices and is generally applicable to all citizens before Oklahoma courts. State Question

755 must therefore only be rationally related to a legitimate governmental interest to pass

constitutional muster. State Question 755 is rationally related to Oklahoma's legitimate

governmental interest in banning consideration in its courts of the laws of other nations and

cultures. Oklahoma's disfavor of the use in its courts of the laws of other nations and

cultures, whether faith-based or not, is substantial, and like the plaintiff in *Locke*, only

incidentally burdens plaintiff in this case. State Question 755 is therefore constitutional

under the Free Exercise Clause.

## CONCLUSION

Plaintiff's motion for a preliminary injunction should be denied because the case does not present a justiciable controversy.  Plaintiff does not have standing to challenge State Question 755 and the matter is not ripe for adjudication.  Even assuming, arguendo, a justiciable controversy was presented, plaintiff's claims must be denied because State Question 755 does not violate the Establishment Clause or the Free Exercise Clause of the U.S. Constitution's First Amendment.

Respectfully submitted:

s/ Scott D. Boughton
**SCOTT D. BOUGHTON, OBA # 991**
**JANIS W. PRESLAR, OBA # 12443**
Assistant Attorneys General
Oklahoma Attorney General's Office
313 N. E. 21st Street
Oklahoma City, Oklahoma  73105
Tele: (405) 521-3921   Fax: (405) 521-4518
Scott.Boughton@oag.ok.gov
*Attorney for Defendants Prince, Turpen,*
*Watkins, and Ziriax*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing, and I further certify that I transmitted a true and correct copy by postage pre-paid U.S. Mail to the following person who is not a registered participant of the Court's ECF System:

Muneer Awad
101 N. E. 53rd Street, # 3514
Oklahoma City, Oklahoma   73105
*Plaintiff pro se*

s/ Scott D. Boughton
Scott D. Boughton

20