IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

FILED

NOV 18 2010

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

| | |
|---|---|
| MUNEER AWAD<br><br>    Plaintiff / Petitioner<br><br>v.<br><br>PAUL ZIRIAX, Agency Head, Oklahoma State Board of Elections<br><br>THOMAS PRINCE, Chairman of the Board, Oklahoma State Board of Elections<br><br>RAMON WATKINS, Board Member, Oklahoma State Board of Elections;<br><br>SUSAN TURPEN, Board Member, Oklahoma State Board of Elections | CASE NO.: CIV-10-1186-M<br><br>Hon. Chief Judge Miles-LaGrange |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO**

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff has met the standard required to grant a preliminary injunction and Plaintiff renews his motion that the preliminary injunction be granted in support of his motion and in response to Defendants' Motion in Opposition, Plaintiff submits the following

1

## **INTRODUCTION**

State Question 755 traverses by great distances the limitations on state action prescribed by the Establishment and Free Exercise Clause. It is literally without precedent. And Defendants' argument against this reality is to imbue the amendment, through an implausible interpretation of State Question 755 (hereinafter "SQ 755"), with an aura of neutrality and innocence. Plaintiff's faith is simply not the target, Defendants say. They argue throughout that SQ 755 treats Plaintiff's faith no different than any other.

But to credit Defendants' position, this Court must ignore the evidence, all of which affirms the evident hostility SQ 755 reserves for Plaintiff's faith alone. The text singles out Plaintiff's faith. The legal framework of SQ 755 singles out Plaintiff's faith. Its disclosed purpose singles out Plaintiff's faith. And if this Court allows SQ 755 to become part of Oklahoma's constitution, the operation of the law will single out Plaintiff's faith.

There is a veritable cornucopia of evidence demonstrating the invidious and discriminatory machinations of SQ 755. Its goal is nothing short of allotting to Mr. Awad rights inferior to those of others. And Defendants' response does not venture even a guess as to why our Constitution would allow this.

## BACKGROUND

### I. INTERPRETING STATE QUESTION 755

With the filing of Defendants' response, this Court confronts two opposing interpretations of SQ 755. Because Defendants rely on their interpretation of SQ 755 to rebut both Plaintiff's Establishment and Free Exercise claims, the validity of Defendants' interpretation deserves special scrutiny. Defendants use their interpretation of SQ 755 as the linchpin argument of their response. Thus, to assist this Court in assessing the validity of Defendants' interpretation of SQ 755, Plaintiff offers a textual analysis of SQ 755.

SQ 755 creates two independent restrictions on the religious tradition it terms "Shariah Law." Enrolled House Joint Resolution 1056, § 1(C). The first restriction, hereinafter the "General Restriction," states that Oklahoma courts "shall not look to the legal precepts of other nations or cultures" and directs state judges "not to consider international law or Shariah Law, in making judicial decisions." *Id.* The second restriction, hereinafter the "State Law Restriction," directs Oklahoma courts to apply "if necessary the law of another state…provided the law of the other state does not include Sharia Law." *Id.* The text of both the General and State Law Restriction, demonstrate that Defendants' interpretation of SQ 755 is wrong.

Defendants argue that, as a whole, SQ 755 acts to "ban Oklahoma courts from looking to the precepts of other nations or cultures." *Defendants' Response*, 12. The

3

conspicuous presence of "Sharia Law" in SQ 755, Defendants suggest, does no more than identify a particular "subset of the reference to precepts of other nations or cultures" excluded from judicial consideration. *Id.* Thus, Defendants assert that SQ 755 is "merely a choice of law provision" directing Oklahoma courts to follow domestic law. *Id.* at 13.

While Defendants characterize in general terms what SQ 755 does, they fail to illuminate the discrete legal mechanisms it deploys. Both the General and State Law Restrictions provide independent grounds for discounting Defendants' interpretation of SQ 755.

A.  GENERAL RESTRICTION

The legal framework that the General Restriction creates is inconsistent with Defendants' interpretation of SQ 755, because the General Restriction, by design, causes Plaintiff's faith to suffer official disfavor. The General Restriction makes certain that Oklahoma courts will define the entirety of the religious tradition to which "Sharia Law" refers as part of the disfavored category of "precepts of other nations or cultures." Enrolled House Joint Resolution 1056, § 1(C). . This outcome necessarily follows from the General Restriction's specific enumeration of "Sharia Law" as content Oklahoma courts cannot "consider." *Id.* Without this specific restriction, Oklahoma courts might not construe Plaintiff's faith as derived from "other nations or cultures" in light of Islam's existence, and its contributions throughout American history. Instead, Oklahoma courts might note that all the major faiths—Christianity, Judaism, and Islam—originated from

the same geographic region thousands of miles away from the United States. *Id.* Thus, an Oklahoma court might hold that it is the practice of faith within the United States that makes a religious tradition a part of American culture. *Id.*

The General Restriction's specific enumeration of "Sharia Law" eliminates this possibility exclusively for Plaintiff's faith. *Id.* The General Restriction defines the religious tradition to which "Sharia Law" refers as a product of "other nations or cultures." *Id.* The legal framework of the General Restriction excludes Plaintiff's faith alone from the possibility of an Oklahoma court defining Plaintiff's faith as part of American culture. *Id.* This legal framework disadvantages Plaintiff's faith uniquely, negating the innocent and neutral interpretation Defendants assert.

Furthermore, the General Restriction excludes from judicial cognizance only the religious traditions of Plaintiff's faith, contrary to Defendants' claims otherwise. This is because the General Restriction, as Defendants assert, ban Oklahoma courts from considering only the "laws from other nations or cultures." *Defendants Response*, 13. "Shariah Law," however, is not law. Thus, the specific enumeration of "Sharia Law" has an independent effect, because the religious traditions to which it refers are not, as Defendant claims, a "subset of the reference to [legal] precepts of other nations or cultures." *Id.* at 12.

As SQ 755 described it, "Shariah Law" encompasses "the Koran and the teaching of Mohammed." State Questions for General Election, Oklahoma State Election Board; accessed at www.ok.gov/elections/documents/sq_gen10.pdf. These religious traditions

are not laws. Rather, the phrase "Sharia Law" is a misnomer insofar as it refers only to religious guidance that Plaintiff and other Muslims use to inform the exercise of their faith. The obligations that "Sharia Law" imposes are not legal obligations. Rather, they are obligations of a personal and private nature dictated by faith. Thus, while the General Restriction may indeed "ban, equally, all laws from other nations or cultures," it subjects only the religious traditions of Plaintiff's faith to the same treatment. *Defendants' Response*, 13.

B.   STATE LAW RESTRICTION

The State Law Restriction directs Oklahoma courts to apply "if necessary the law of another state...provided the law of the other state does not include Sharia Law." Enrolled House Joint Resolution 1056, § 1(C). Thus, it forces Oklahoma courts, prior to applying the law of another state, to make a preliminary determination that the law "does not include Sharia Law." *Id.* Regarding the State Law Restriction, Defendants cannot argue, as they did with respect to the General Restriction, that Sharia Law is but a "subset of the reference to [legal] precepts of other nations or cultures." *Defendants' Response*, 12. This restriction applies only to the religious tradition to which "Sharia Law" refers.

C.   SUMMARY OF INTERPRETATION

The General and State Law Restrictions contained in SQ 755 isolate Plaintiff's faith for uniquely onerous treatment in three ways. First, the General Restriction's specific enumeration of "Sharia Law" directs Oklahoma courts to characterize Plaintiff's

faith and no other as derived from "other nations or cultures" and thus subject to the General Restriction's exclusion from judicial cognizance. Second, because "Sharia Law" lacks a legal character, the religious tradition to which Sharia refers is the only non-legal content subject to judicial exclusion. And third, the State Law Restriction forces courts, when applying the law of other states, to make a preliminary determination that the law of the other state does not "include Sharia Law." If a court does find that the law of the other state includes "Sharia Law," than the State Law Restriction forbids the court from applying the law. No other content, whether religious or irreligious, is treated in the same onerous manner.

The existence of this disparate treatment makes clear that Defendants' interpretation does not comport with SQ 755's text. The constitutional implications of the above interpretation are outlined below.

## ARGUMENT

I.    **DEFENDANTS' ESTABLISHMENT CLAUSE ARGUMENT**

A.    SQ 755 HAS A SECTARIAN LEGISLATIVE PURPOSE

Defendants' argument asserting a secular purpose for SQ 755 is defective for two reasons. First, Defendants incorrectly conclude—without citing any authority—that consideration of "statements made in the press by the authors" of SQ 755 is "improper."

And second, Defendants rely on a faulty construction of SQ 755 to suggest that SQ 755's words demonstrate a secular purpose.

1. The Author of SQ 755's Public Disclosure of its Sectarian Purpose

*Heideman v. South Salt Lake City* held that the "federal rules of evidence do not apply to preliminary injunction hearings." 348 F.3d 1182, 1188 (10th Cir., 2003). This binding precedent allows this Court to draw the same conclusion, based on the public disclosure of the SQ 755's sectarian purpose, it reached in its prior order: that SQ 755 "does not have a secular purpose." *Awad v. Ziriax,* Temporary Restraining Order, p. 6, November 9, 2010. As this Court noted in its order, the chief architect of SQ 755 disclosed his sectarian purpose proudly. *Id.* Representative Rex Duncan announced that "America was founded on Judeo-Christian principles" and SQ 755 was meant to ensure that Oklahoma courts would not be used to "undermine those principles."[1] MSNBC Interview with Representative Rex Duncan . He has adopted as a talking point, repeated at every opportunity, that the purpose of SQ 755 was to effect a "preemptive strike" against the "growing threat" of Sharia law in the midst of a "cultural war, a social war, a war for the survival of our country." *Id.* According to its authors and uncontroverted by Defendants, SQ 755's disclosed purpose is impermissibly sectarian. *Id.*

2. Defendants' Faulty Construction of SQ 755's "Plain and Ordinary Language"

Defendants rely on a faulty construction of the language of SQ 755 to suggest that its purpose is secular. As demonstrated above, the legal mechanisms created by SQ 755

---

[1] Accessed at http://www.youtube.com/watch?v=-LxwPN-2pYw&feature=related

do much more than "ban Oklahoma courts from looking to the precepts of other nations or cultures." The General and State Law Restrictions single out Plaintiff's faith for disparate treatment in three ways: (1) explicitly defining the content of Plaintiff's faith as derived from "other nations or cultures," (2) excluding from judicial cognizance the religious traditions that inform Plaintiff's faith alone, and (3) directing Oklahoma courts, when applying the law of other states, to make a preliminary determination that the law does not "include Sharia Law." The recurring infliction of disadvantage that SQ 755's General and State Law Restrictions place on Plaintiff's faith alone demonstrates a sectarian purpose hostile to Islam.

B. SQ 755 REQUIRES EXCESSIVE ENTANGLEMENT

The substance of Defendants claim that SQ 755 "ensures [that] there is no entanglement" between Oklahoma and Plaintiff's faith demonstrates the impermissible entanglement that SQ 755's certification will require. *Defendants' Response*, 12. Defendants argue that Sharia Law, which SQ 755 specifies is based on the "Koran and the teaching of Mohammed," conflicts with Oklahoma law insofar as it considers the "father the natural guardian of his children, with the paternal grandfather as the second in line for guardianship." *Id.* The State Attorney General's office is taking a position on matters of religious doctrine to which Plaintiff disagrees. Taking such positions, as Defendants did in their filing to this Court, results in impermissible excessive entanglement. *See Mitchell v. Helms* [directing courts to "refrain from trolling through a

person's or institution's religious beliefs."]; *NLRB v. Catholic Bishop of Chicago* [holding that the "very process of inquiry" into religious doctrines violates the Establishment Clause]; *Salazar v. Buono* [holding that the Establishment Clause "prohibits government from appearing to take a position on questions of religious belief."]. Defendants' argument is an example of the excessive entanglement that necessarily follows certification of SQ 755.

Furthermore, Defendants have no reply to the inescapable paradox that SQ 755 creates: in order to "not...consider Sharia Law", a judge must consider Sharia Law to determine what is and what is not "Sharia Law." Enrolled House Joint Resolution 1056, § 1(C). This forces Oklahoma Courts to impermissibly take positions on matters of religious doctrine.

## II. DEFENDANTS' FREE EXERCISE CLAUSE ARGUMENT

Defendants' arguments against Plaintiff's free exercise claim derive from a misinterpretation of SQ 755. Defendants claim that SQ 755 "does not prevent plaintiff's will from being fully probated" by an Oklahoma court. *Defendants' Response*, 18. Defendants believe this because a court that incorporates, by reference, the verses of the Sharia that Plaintiff identified in his will do *"not require the application of Sharia law."* However, Defendants have misquoted the text of SQ 755. Rather than forbid state courts from applying Shariah law, SQ 755 acts more broadly by directing the courts "to not **consider**...Sharia Law." (emphasis added). The meaning of "consider" is "to think of"

or "make allowance for." Thus, a judge could not "make allowance for" the text referred to in Plaintiff's will to determine if the content of the document comports with Plaintiff's "intention to incorporate the instrument into his will." *Miller v. First Nat. Bank & Trust Co.*, 637 P.2d 75 (Okla., 1981). An Oklahoma court would also not be able to verify that the text Plaintiff referred to abides by existing law without "consider[ing]...Sharia Law" insofar as the teachings of Mohammed, to which Plaintiff refers, comprise the core of what SQ 755 identifies as Sharia Law. Indeed, for an Oklahoma court to incorporate by reference the prophetic teachings to which Plaintiff refers, would require a state court to subject the document to legal scrutiny far beyond the ban on consideration of Sharia that SQ 755 imposes. To direct Oklahoma courts to refrain from considering Sharia Law is to exclude from judicial cognizance all that a judge deems to be Sharia Law. Thus, the certain outcome is that a court will not probate the entirety of his will, because SQ 755 would nullify the operation of the incorporation by reference doctrine for matters regarding Plaintiff's faith.

### III.   DEFENDANTS' STANDING ARGUMENT

Defendants allege the Plaintiff's injuries are based on "personal opinion" or are too "speculative" to constitute harm. *Defendants' Response*, 4. However, standing is a test of sufficiency of the pleadings rather than an analysis of the merits of the argument. *See Initiative and Referendum Institute v. Walker*, 450 F.3d 1082, 1088 (2006) [holding that courts, to determine standing, must "ask only if there was an injury in fact, caused by the challenged action and redressable in court."]

Here, plaintiff alleges three injuries in fact: SQ 755 will (1) officially condemn his faith, (2) entangle Oklahoma's courts in defining the parameters of Plaintiff's faith, and (3) prevent him from exercising his faith with regards to his will.[2] *Complaint,* ¶ 18-28. Plaintiff alleges that these are concrete and particular, that they are not speculative but rather imminent, they are traceable and will occur instantaneously with Defendants' action to certify the election results, and a favorable ruling from this Court would redress these injuries. *Id.* Whether or not these claims are ultimately meritorious is not relevant to standing. *Id.* The fact that these claims allege legally cognizable injuries that are redressable and traceable to actions Defendants' will take absent an injunction confers upon Plaintiff the right to ask this Court to determine his claims on the merits.

Plaintiff's allegations articulate an injury that is imminent, because it is certain that if this Court does not enjoin Defendants, they will certify the election results and thereby instantaneously cause injury. At the moment of certification, even under the most modest interpretation of this Amendment, Plaintiff's faith will be officially condemned in our State's Constitution and his Last Will and Testament will be invalid. The injuries alleged are imminent and certain to occur absent this Court's intervention

Furthermore, under the Establishment Clause, even "a spiritual stake in First Amendment values" is enough to confer standing. Indeed, regarding the Establishment Clause, even "a spiritual stake in First Amendment values" is enough to confer standing. *Association of Data Processing Service Organizations, Inc v. Camp*, 397 U.S. 150, 154

(1970); *see also American Civil Liberties Union of Georgia v. Rabun County* 678 F.2d 1379, 1387 (C.A.11 (Ga.), 1982) [determining that a "person...may have a spiritual stake in First Amendment values sufficient to give standing to raise issues concerning the Establishment Clause"]; *Religious v. City* [holding that persons of Catholic faith had a "sufficient interest" in litigating a whether a non-binding "anti-Catholic resolution violates the Establishment Clause.]. Thus, Plaintiff's allegations that he is a Muslim and that the certification of SQ 755 will offend and inhibit his faith confer standing.

And finally, the Establishment and Free Exercise jurisprudence has long recognized that the injuries Plaintiff alleges are "invasion[s] of...legally protected interest[s]" *Hydro Res., Inc. v. United States Envtl. Prot. Agency*, 608 F.3d 1131, 1144 (10th Cir. 2010). *See Everson v. Board of Education* 330 U.S. 1, 18 (1947) [holding that "state power is no more to be used so as to handicap religions, than it is to favor them"]; *Larson v. Valente* 456 U.S. 228, 244 (1982) [noting that the "clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another."]; *County of Allegheny v. ACLU* 492 U.S. 573, 590-591 (1989) [holding that the First Amendment dictates that government may not discriminate on the basis of their religious beliefs and practices...and may not involve itself too deeply in such an institution's affairs."]; *Skoros v. City of New York* 437 F.3d 1, 16 (2nd Cir., 2006) [noting that "it has long been accepted that the Establishment Clause prohibits government from officially preferring one religious denomination over another."]

Defendants make no argument regarding the causation and redressability of

Plaintiff's injuries. Thus, because Plaintiff has properly alleged legally cognizable injuries that, absent intervention by this Court, will be caused by Defendants' actions, and to which this Court may redress, Plaintiff has standing to maintain this action

## IV. DEFENDANTS' RIPENESS ARGUMENT

The Defense claims that Plaintiff's complaint will not be ripe until a court actually makes a ruling on the issues of Free Exercise and the Establishment Clause in relation to this amendment. The alleged injury from the violation of the Establishment Clause does not need judicial review in order to be ripe. Upon certification of the election results, this State's Constitution will officially "disfavor" Plaintiff's faith. This amendment's purpose as alleged by Defense is to "disfavor" the named codes and laws in our State Courts. (pg.19), and it is the very existence of the text within Oklahoma's constitution that violates Plaintiff's rights—not a judgment that will subsequently interpret that text.

Defendants also claim the Plaintiff's Free Exercise claim will not be ripe until the will is probated. This suggests the Plaintiff will have standing and his complaint will be ripe only after he is deceased. This is unreasonable. The Amendment interpreted in its most narrow sense, would clearly prohibit a court from considering the Plaintiff's intent with respect to the incorporation of Sharia principles. Again the Amendment forbids the consideration of Sharia Law. A court that is forbidden from even thinking about Sharia, will be unable to probate a will with the incorporation of Sharia texts. There is no speculation in concluding that a judge forbidden from thinking about Sharia, will be unable to probate a will that incorporates Sharia.

## **CONCLUSION**

The Plaintiff's motion for a Preliminary Injunction should be granted because Plaintiff has proven that Standing exists, the claim is Ripe, and the elements for a Preliminary Injunction are met by the facts before this Court. SQ755 has presented the state of Oklahoma with an amendment to our Constitution that is facially discriminatory. The intention to single out and marginalize a single religious tradition was not even hidden in its wording. Indeed, its invidious design is made clear through the text and meaning of the amendment and reiterated by the chorus of SQ 755's architects.

**CERTIFICATE OF MAILING**

The undersigned hereby certifies that a true & correct copy of the foregoing instrument was mailed to opposing counsel on record on the 18 day of Nov. 2010.

_[signature]_

Pro Se

Respectfully Submitted:

_[signature]_

MUNEER O. AWAD

PRO SE LITIGANT

Gold Dome, 1112 NW 23rd St Suite 207

Oklahoma City OK 73106

(405) 415-6851

mawad@cair.com

Scott D. Boughton
Attorney General's Ofc - Lincoln - OKC
General Counsel - Litigation Division
4545 N. Lincoln Blvd
Suite 260
Oklahoma City, OK 73105
405-521-4274
scott_boughton@oag.state.ok.us

15