## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MUNEER AWAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-1186-M |
| | ) | |
| PAUL ZIRIAX, Agency Head, Oklahoma | ) | |
| State Board of Elections; | ) | |
| THOMAS PRINCE, Chairman of the | ) | |
| Board, Oklahoma State Board of Elections; | ) | |
| RAMON WATKINS, Board Member, | ) | |
| Oklahoma State Board of Elections; | ) | |
| SUSAN TURPEN, Board Member, | ) | |
| Oklahoma State Board of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This order addresses issues that go to the very foundation of our country, our Constitution, and particularly, the Bill of Rights. Throughout the course of our country's history, the will of the "majority" has on occasion conflicted with the constitutional rights of individuals, an occurrence which our founders foresaw and provided for through the Bill of Rights. As the United States Supreme Court has stated:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943).

Before the Court is plaintiff's Complaint Seeking a Temporary Restraining Order and Preliminary Injunction, filed November 4, 2010.  On November 16, 2010, defendants filed their Response to Plaintiff's Motion for Preliminary Injunction.  On that same date, amicus curiae United States Border Control, United States Border Control Foundation, Lincoln Institute for Research and Education, and Conservative Legal Defense and Education Fund filed an Amicus Curiae Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.  On November 18, 2010, plaintiff filed his reply.  On November 22, 2010, the Court conducted a hearing on plaintiff's motion for a preliminary injunction.  Based upon the pleadings that have been filed and the evidence submitted at the hearing[1], the Court makes its determination.

I.      Introduction

State Question 755, which was on Oklahoma's November 2, 2010 ballot, provides:

> This measure amends the State Constitution.  It changes a section that deals with the courts of this state.  It would amend Article 7, Section 1.  It makes courts rely on federal and state law when deciding cases.  It forbids courts from considering or using international law.  It forbids courts from considering or using Sharia Law.
>
> International law is also known as the law of nations.  It deals with the conduct of international organizations and independent nations, such as countries, states and tribes.  It deals with their relationship with each other.  It also deals with some of their relationships with persons.
>
> The law of nations is formed by the general assent of civilized nations.  Sources of international law also include international agreements, as well as treaties.
>
> Sharia Law is Islamic law.  It is based on two principal sources, the Koran and the teaching of Mohammed.

---

[1]At the hearing, the Court reserved its ruling as to whether plaintiff's exhibit 3 would be admitted.  Having heard the argument of counsel and having reviewed the case law, the Court finds that plaintiff's exhibit 3 should not be admitted.

State Question 755 was put on the ballot through the legislative adoption of Enrolled House

Joint Resolution 1056.  Said resolution proposes to amend Section 1 of Article VII of the Oklahoma

Constitution by adding the following section:

> C.  The Courts provided for in subsection A of this section when exercising their judicial authority, shall uphold and adhere to the law as provided in the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and if necessary the law of another state of the United States provided the law of the other state does not include Sharia Law, in making judicial decisions.  The courts shall not look to the legal precepts of other nations or cultures. Specifically, the courts shall not consider international law or Sharia Law.  The provisions of this subsection shall apply to all cases before the respective courts including, but not limited to, cases of first impression.

Enr. H. J. R. No. 1056 at 2.  Additionally, said resolution provides that the above section shall be

known as the "Save Our State Amendment".  *Id.*

Election results show that 70.08 per cent of the voters approved State Question 755.  Once

the Oklahoma State Board of Elections certifies the election results, the amendment set forth above

will become a part of the Oklahoma Constitution.

On November 4, 2010, plaintiff filed the instant action, challenging the constitutionality of

State Question 755's amendment to the Oklahoma Constitution.  Specifically, plaintiff asserts that

the ban on the state courts' use and consideration of Sharia Law violates the Establishment Clause

and the Free Exercise Clause of the First Amendment to the United States Constitution.  In his

complaint, plaintiff, pursuant to Federal Rule of Civil Procedure 65, moves the Court to enter a

preliminary injunction enjoining defendants from certifying the election results for State Question

755 until this Court rules on the merits of plaintiff's claims.

3

II.    Standing

Under Article III, federal courts have jurisdiction only to decide "Cases" and "Controversies."  U.S. Const. art. III, § 2.  An essential part of the case-or-controversy requirement is the concept that a plaintiff must have standing.

> A party has standing to pursue a claim in federal court only if: (1) it suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) that injury is fairly traceable to the challenged action of the defendant rather than some third party not before the court; and (3) that injury is likely to be redressed by a favorable decision.

*Hydro Res., Inc. v. United States Envtl. Prot. Agency*, 608 F.3d 1131, 1144 (10th Cir. 2010) (internal quotations and citation omitted).

In their response, defendants assert that plaintiff has not suffered an "injury in fact" and, therefore, lacks standing to bring this action.[2]  Specifically, defendants assert that plaintiff has suffered no harm and will suffer no harm if defendants certify the election results.  Defendants contend that plaintiff will be able to engage in the same daily activities after the certification of the election results as he is able to engage in today.  Further, defendants contend that plaintiff's claim that the proposed amendment condemns his religion is a personal opinion, rather than a legal argument and that his claim that the amendment will invalidate his last will and testament is speculation.

"For purposes of the standing inquiry, the question is not whether the alleged injury rises to the level of a constitutional violation.  That is the issue on the merits.  For standing purposes,

---

[2]In their response, defendants do not address the second and third requirements of standing. The Court, therefore, finds that defendants have confessed that plaintiff meets these requirements.

4

[courts] ask only if there was an injury in fact, caused by the challenged action and redressable in court." *Initiative and Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006). In determining whether a plaintiff has standing, the Court must assume plaintiff's claim has legal validity. *Id.* at 1093. Further, the Tenth Circuit has recognized "that a chilling effect on the exercise of a plaintiff's First Amendment rights may amount to a judicially cognizable injury in fact, as long as it arise[s] from an objectively justified fear of real consequences." *Id.* at 1088. Additionally, "[i]n its interpretation of the 'injury in fact' requirement, the Supreme Court has repeatedly emphasized that a showing of noneconomic injury is sufficient to confer standing." *Am. Civil Liberties Union of Ga. v. Rabon County Chamber of Commerce, Inc.*, 678 F.2d 1379, 1384-85 (11th Cir. 1982).

Having carefully reviewed the briefs on this issue, and having heard the evidence and arguments presented at the hearing, the Court finds that plaintiff has shown that he will suffer an injury in fact, specifically, an invasion of his First Amendment rights which is concrete, particularized and imminent. First, plaintiff claims that the moment the Oklahoma Constitution is amended, his First Amendment rights will be violated by Oklahoma's official condemnation of his religion/faith as reflected through the amendment's ban of the state courts' use or consideration of Sharia Law and that said official condemnation will result in a stigma attaching to his person, relegating him to an ineffectual position within the political community, and causing him injury.

> A "psychological consequence" does not suffice as concrete harm where it is produced merely by "observation of conduct with which one disagrees." But it does constitute concrete harm where the "psychological consequence" is produced by government condemnation of one's own religion or endorsement of another's in one's own community. . . . What distinguishes the cases is that in

> *Valley Forge*[3], the psychological consequence was merely disagreement with the government, but in the others, for which the Court identified a sufficiently concrete injury, the psychological consequence was exclusion or denigration on a religious basis within the political community.

*Catholic League for Religious and Civil Rights v. City and County of San Francisco*, No. 06-17328, 2010 WL 4138432, at *4 (9th Cir. Oct. 22, 2010).

In the case at bar, the Court finds that plaintiff's alleged condemnation injury is sufficiently concrete, particularized and imminent.  Plaintiff has sufficiently set forth a personal stake in this action by alleging that he lives in Oklahoma, is a Muslim, that the amendment conveys an official government message of disapproval and hostility toward his religious beliefs, that sends a clear message he is an outsider, not a full member of the political community, thereby chilling his access to the government and forcing him to curtail his political and religious activities.  Further, the Court finds the consequences – the condemnation – that plaintiff believes will result from the amendment are objectively justified.  Finally, the Court would note that it would be incomprehensible if, as plaintiff alleges, Oklahoma could condemn the religion of its Muslim citizens, yet one of those citizens could not defend himself in court against his government's preferment of other religious views.

Second, plaintiff claims that his First Amendment rights will be violated by the invalidation of his last will and testament which incorporates various teachings of Mohammed.  Specifically, plaintiff asserts that because Oklahoma courts will be banned from considering Sharia Law, an Oklahoma court would not be able to probate his last will and testament because it would be

---

[3]*Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464 (1982).

required to consider Sharia Law.  The Court finds that plaintiff is objectively justified in believing

that said consequences would result from the amendment.  Specifically, the article in plaintiff's will

which addresses the distribution of certain of plaintiff's assets to charity is specifically linked to a

teaching of Mohammed – what the amendment would clearly consider Sharia Law – and, thus, it

would appear that any Oklahoma court probating plaintiff's last will and testament would be

required to consider Sharia Law when it issued its order approving the distribution of plaintiff's

assets and, because it would be banned from considering Sharia Law, it, thus, would be precluded

from probating plaintiff's will.  The Court further finds that as a result, plaintiff will suffer a

concrete, particularized, and imminent injury in that his last will and testament will likely be unable

to be probated and, therefore, be unenforceable.

Finally, the Court finds, and as defendants have conceded, that plaintiff has shown that his

alleged injuries are fairly traceable to the challenged action of defendants and are likely to be

redressed by a favorable decision.  Accordingly, the Court finds that plaintiff has standing to bring

the instant action.

III.   Ripeness

In order for a claim to be justiciable under Article III, it also must present a live controversy,

ripe for determination, advanced in a "clean-cut and concrete form."  *Renne v. Geary*, 501 U.S. 312,

322 (1991).  A court's ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but

rather whether the harm asserted has matured sufficiently to warrant judicial intervention.  In short,

[r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up

the asserted claim."  *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1116 (10th Cir. 2008) (internal

quotations and citations omitted) (emphasis in original).  Generally, a court "evaluate[s] the fitness

of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration." *Id.* (internal quotations and citation omitted).  Further, in evaluating whether a case is "ripe", "the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Initiative and Referendum Inst.*, 450 F.3d at 1097 (internal quotations and citation omitted).

Having carefully reviewed the briefs on this issue, and having heard the evidence and arguments presented at the hearing, the Court finds that the instant action is ripe for determination. Specifically, the Court finds that plaintiff's claims are fit for judicial resolution.  Election results show that voters approved State Question 755, and, thus, only certification of the election results is required for the amendment to take effect.  Once the amendment is in place, any alleged violation of plaintiff's First Amendment rights would occur.  The Court further finds plaintiff would suffer significant hardship if judicial consideration of plaintiff's claims were withheld.

Additionally, the Court finds that plaintiff's alleged injury does not depend on any uncertain, contingent future events; all that is remaining is the ministerial task of defendants certifying the election results, which no party contends will not occur once any injunction is lifted by the Court. In fact, the Agenda for the Oklahoma State Election Board Meeting which was to occur on November 22, 2010 included an item regarding the certification of the election results for State Question 755.  *See* Agenda for Oklahoma State Election Board Meeting, plaintiff's hearing Exhibit 7.  Finally, the Court finds that because plaintiff is making a facial challenge to the amendment at issue, there is no need for the Court to wait for any Oklahoma court to interpret said amendment. Nothing will be gained by allowing the issues in this case to develop further.

IV.    Preliminary Injunction

A movant seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).  "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted).  Whether to grant a preliminary injunction rests within the sound discretion of the trial court.  *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

If, however, a movant is seeking a disfavored preliminary injunction – preliminary injunctions that alter the status quo, mandatory preliminary injunctions, or preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits – the movant must satisfy a heightened burden.  *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).  "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 975.  Specifically, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms". *Id.* at 976.

As set forth above, plaintiff requests the Court to enjoin defendants from certifying the election results for State Question 755.  Because this requested preliminary injunction alters the status quo and affords plaintiff all the relief that he could recover at the conclusion of a full trial on

the merits, the Court finds that it is a disfavored preliminary injunction and plaintiff must satisfy a heightened burden.

  A.  <u>Likelihood of success on the merits</u>

  As set forth above, plaintiff asserts that State Question 755's amendment to the Oklahoma Constitution violates the First Amendment's Establishment Clause.  When a claim asserting a violation of the Establishment Clause has been made, "[t]o pass constitutional muster, the governmental action (1) must have a secular legislative purpose, (2) its principal or primary effect must be one that neither advances nor inhibits religion, and (3) it must not foster an excessive government entanglement with religion." *Weinbaum v. City of Las Cruces, N.M.*, 541 F.3d 1017, 1030 (10th Cir. 2008) (internal quotations and citations omitted).  Thus, for plaintiff to prevail on this claim, the amendment must fail to meet at least one of these three prongs.

  The purpose and effect prongs of the test are interpreted in light of Justice O'Connor's endorsement test.  "Under the 'endorsement test,' the government impermissibly endorses religion if its conduct has either (1) the purpose or (2) the effect of conveying a message that religion or a particular religious belief is favored or preferred." *Id.* (internal quotations and citations omitted).  Further, "[u]nder the [endorsement] test, the purpose prong of the . . . test asks whether government's actual purpose is to endorse or disapprove of religion.  The effect prong asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval." *Am. Atheists, Inc. v. Duncan*, 616 F.3d 1145, 1156 (10th Cir. 2010).

  Having carefully reviewed the briefs on this issue, and having heard the evidence and arguments presented at the hearing, the Court finds plaintiff has made a strong showing of a substantial likelihood of success on the merits of his claim asserting a violation of the Establishment

Clause.  Specifically, the Court finds that plaintiff has made a strong showing that State Question 755's amendment's primary effect inhibits religion and that the amendment fosters an excessive government entanglement with religion.  While defendants contend that the amendment is merely a choice of law provision that bans state courts from applying the law of other nations and cultures, regardless of what faith they may be based on, if any, the actual language of the amendment reasonably, and perhaps more reasonably, may be viewed as specifically singling out Sharia Law, conveying a message of disapproval of plaintiff's faith.  The amendment creates two independent restrictions on use/consideration of Sharia Law: (1) the amendment requires that Oklahoma courts "shall not consider . . . Sharia Law", and (2) the amendment allows Oklahoma courts to use/consider the law of another state of the United States but only if "the other state does not include Sharia Law".  No other "legal precepts of other nations or cultures" is similarly restricted with respect to the law of another state.

Furthermore, plaintiff has presented testimony that "Sharia Law" is not actually "law", but is religious traditions that provide guidance to plaintiff and other Muslims regarding the exercise of their faith.  Plaintiff has presented testimony that the obligations that "Sharia Law" imposes are not legal obligations but are obligations of a personal and private nature dictated by faith.  Plaintiff also testified that "Sharia Law" differs depending on the country in which the individual Muslim resides.  For example, plaintiff stated that marrying more than one wife is permissible in Islam but in the United States, where that is illegal, Muslims do not marry more than one wife because Sharia in the United States mandates Muslims to abide by the law of the land and respect the law of their land.  Based upon this testimony, the Court finds that plaintiff has shown "Sharia Law" lacks a legal character, and, thus, plaintiff's religious traditions and faith are the only non-legal content subject

to the judicial exclusion set forth in the amendment.  As a result, the Court finds plaintiff has made a strong showing that the amendment conveys a message of disapproval of plaintiff's faith and, consequently, has the effect of inhibiting plaintiff's religion.

Additionally, the Court finds that plaintiff has made a strong showing that the amendment will foster an excessive government entanglement with religion.  Because, as set forth above, Sharia Law is not "law" but is religious traditions that differ among Muslims, the Court finds that plaintiff has shown that to comply with the amendment, Oklahoma courts will be faced with determining the content of Sharia Law, and, thus, the content of plaintiff's religious doctrines.  The United States Supreme Court has held: "[i]t is well established . . . that courts should refrain from trolling through a person's or institution's religious beliefs."  *Mitchell v. Helms*, 530 U.S. 793, 828 (2000).

Plaintiff also asserts that State Question 755's amendment to the Oklahoma Constitution violates the First Amendment's Free Exercise Clause.  "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993).  Further, "[a]lthough a law targeting religious beliefs as such is never permissible, if the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral, and it is invalid unless it is justified by a compelling interest and is narrowly tailored to advance that interest."  *Id.* at 533 (internal citations omitted).  However, "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  *Id.* at 531.

12

Having carefully reviewed the briefs on this issue, and having heard the evidence and arguments presented at the hearing, the Court finds plaintiff has made a strong showing of a substantial likelihood of success on the merits of his claim asserting a violation of the Free Exercise Clause.  As set forth above, plaintiff has shown that the actual language of the amendment reasonably, and perhaps more reasonably, may be viewed as specifically singling out Sharia Law (plaintiff's faith) and, thus, is not facially neutral.  Additionally, as set forth above, the Court finds that plaintiff has shown that there is a reasonable probability that the amendment would prevent plaintiff's will from being fully probated by a state court in Oklahoma because it incorporates by reference specific elements of the Islamic prophetic traditions.  Further, plaintiff has presented evidence that there is a reasonable probability that Muslims, including plaintiff, will be unable to bring actions in Oklahoma state courts for violations of the Oklahoma Religious Freedom Act and for violations of their rights under the United States Constitution if those violations are based upon their religion.  Finally, the Court finds that defendants have presented no evidence which would show that the amendment is justified by any compelling interest or is narrowly tailored.

Accordingly, the Court finds that plaintiff has made a strong showing of a substantial likelihood of success on the merits.

B.    Irreparable injury

Plaintiff contends that he will be irreparably injured because he will suffer the loss of his First Amendment freedoms at the moment defendants certify State Question 755's election results.  "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  Accordingly, the Court finds that plaintiff has shown that he will suffer irreparable injury in the absence of injunctive relief.

13

C.      Balance of harms

A movant seeking a preliminary injunction must show that the threatened injury to him outweighs the injury to the party opposing the preliminary injunction.  In the case at bar, plaintiff, therefore, must show that the alleged loss of his First Amendment freedoms outweighs any injury that would occur from delaying the will of the voters being carried out by certifying the election results.  As set forth at the beginning of this Order, the Bill of Rights protects certain individual rights from being taken away by the will of the majority.  *See W. Va. State Bd. of Educ.*, 319 U.S. at 638.  Based upon this constitutional ranking of interests, the Court finds that the weighing of the harms involved in this case clearly would favor protecting plaintiff's First Amendment rights over the will of the voters.  The Court also finds that any harm that would result from a delay in certifying the election results is further minimized in light of the undisputed fact that the amendment at issue was to be a preventative measure and that the concern that it seeks to address has yet to occur.  Specifically, when questioned at the hearing, defendants' counsel stated that he was not aware of any Oklahoma court who had used the precepts of other nations or cultures and was not aware of any situation where Sharia Law has been applied in an Oklahoma court.

Accordingly, the Court finds that plaintiff has made a strong showing that the threatened injury to him outweighs the injury to the party opposing the preliminary injunction.

D.      Public interest

Finally, a movant seeking a preliminary injunction must show that the injunction would not be adverse to the public interest.  Having carefully reviewed the briefs on this issue, and having heard the evidence and arguments presented at the hearing, the Court finds that entry of a preliminary injunction enjoining defendants from certifying the election results for State Question

14

755 would not be adverse to the public interest.  While the public has an interest in the will of the voters being carried out, for the reasons set forth above, the Court finds that the public has a more profound and long-term interest in upholding an individual's constitutional rights.  As the Sixth Circuit has stated, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).  Further, Oklahoma has enacted the Oklahoma Religious Freedom Act, which provides that "no governmental entity shall substantially burden a person's free exercise of religion". Okla. Stat. tit. 51, § 253 (A).  The Court finds that the enactment of this Act further indicates that it is in the public interest to uphold an individual's constitutional right to freedom of religion.

Accordingly, the Court finds that plaintiff has shown that the injunction would not be adverse to the public interest.

V.      Conclusion

Therefore, for the reasons set forth above, the Court GRANTS plaintiff's request for a preliminary injunction and ENJOINS defendants from certifying the election results for State Question 755 until this Court rules on the merits of plaintiff's claims.

**IT IS SO ORDERED this 29th day of November, 2010.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE