# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MUNEER AWAD, ADAM SOLTANI, IMAD ENCHASSI, DOUGLAS MOCK, PATRICIA SCHWAGMEYER, <br><br> Plaintiffs, <br><br> vs. <br><br> PAUL ZIRIAX, Secretary; STEVE CURRY, Chairman; TOM MONTGOMERY, DIANE SPURLOCK, members of the Oklahoma State Election Board, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) Case No. CIV-10-1186-M ) ) ) ) ) ) ) ) |

## ORDER

Before the Court are plaintiffs' Motion for Summary Judgment and defendants' Cross Motion for Summary Judgment. The matter has been fully briefed. Based upon the parties' submissions, the Court makes its determination.

### I.  FACTUAL BACKGROUND

On May 18, 2010, the Oklahoma House of Representatives voted to approve House Joint Resolution 1056 ("HJR 1056"), and the Oklahoma Senate followed suit on May 24, 2010. The joint resolution mandated that a proposed constitutional amendment, entitled the "Save Our State Amendment," be placed on the next electoral ballot for a vote of the people. The proposed constitutional amendment provided:

> The Courts . . . when exercising their judicial authority, shall uphold and adhere to the law as provided in the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and if necessary the law of another state of the United States provided the law of the other state does not include Sharia Law, in making judicial

> decisions. The courts shall not look to the legal precepts of other nations or cultures. Specifically, the courts shall not consider international law or Sharia Law. The provisions of this subsection shall apply to all cases before the respective courts including, but not limited to, cases of first impression.

HJR 1056 at 3. During conference, the legislators added the language "provided the law of the other state does not include Sharia Law" to the provision allowing courts to consider the law of another state of the United States.

The proposed ballot title stated:

> This measure amends the State Constitution. It would change a section that deals with courts of this state. It would make courts rely on federal and state laws when deciding cases. It would forbid courts from looking at international law or Sharia Law when deciding cases. SHALL THE PROPOSAL BE APPROVED?

HJR 1056 at 4.

After passage of HJR 1056, the Secretary of State forwarded the proposed ballot title to the Attorney General for review, as required by law. Determining that the proposed ballot title did not adequately explain the effect of the proposed amendment because it failed to define what either Sharia Law or international law is, the Attorney General revised it to read:

> This measure amends the State Constitution. It changes a section that deals with the courts of this state. It would amend Article 7, Section 1. It makes courts rely on federal and state law when deciding cases. It forbids courts from considering or using international law. It forbids courts from considering or using Sharia Law.
>
> International law is also known as the law of nations. It deals with the conduct of international organizations and independent nations, such as countries, states and tribes. It deals with their relationship with each other. It also deals with some of their relationships with persons.

> The law of nations is formed by the general assent of civilized nations. Sources of international law also include international agreements, as well as treaties.
>
> Sharia Law is Islamic law. It is based on two principal sources, the Koran and the teaching of Mohammed.
>
> SHALL THE PROPOSAL BE APPROVED?
>
> FOR THE PROPOSAL – YES   _____
>
> AGAINST THE PROPOSAL – NO   _____

Final Ballot Title [docket no. 17-1, p. 13-14].

The Attorney General then submitted the revised ballot title to the Secretary of State, Senate President Pro Tempore, and House Speaker for their review. No objections or concerns about the proposed revisions to the ballot title were expressed, and with no objections, the ballot title was finalized and placed on the ballot as Oklahoma State Question 755 ("SQ 755").

On November 2, 2010, 70.08% of Oklahomans who voted approved SQ 755. Once the Oklahoma State Board of Elections certifies the election results, the amendment will become a part of the Oklahoma Constitution.

## II. PROCEDURAL BACKGROUND

On November 4, 2010, plaintiff Muneer Awad filed this action, challenging the constitutionality of SQ 755's amendment to the Oklahoma Constitution and seeking to enjoin the certification of the election results for SQ 755. Plaintiff Awad alleged that SQ 755 violated the Establishment Clause and the Free Exercise Clause of the First Amendment to the United States Constitution. Plaintiff Awad is an American citizen born in Ann Arbor, Michigan, and a devout, lifelong Muslim. At the time of SQ 755's passage, plaintiff Awad was the executive director of the

Oklahoma Chapter of the Council on American-Islamic Relations ("CAIR-OK") and resided in Oklahoma City, Oklahoma.

On November 8, 2010, a hearing on plaintiff Awad's motion for a temporary injunction was held, and this Court orally granted a temporary restraining order, *see* docket no. 6, and issued a written opinion one day later, *see* docket no. 7. On November 22, 2010, a preliminary injunction hearing was held. On November 29, 2010, the Court granted the preliminary injunction, finding plaintiff Awad had standing, his claims were ripe, SQ 755 likely violated both the Free Exercise Clause and the Establishment Clause, the balance of harms weighed strongly in favor of plaintiff Awad, the alleged violation of plaintiff Awad's First Amendment rights constituted irreparable injury, and the public interest demanded protection of these rights. *See* November 29, 2010 Order [docket no. 20]. Defendants filed a timely notice of appeal on December 1, 2010. On January 10, 2012, the Tenth Circuit issued its ruling, affirming this Court's grant of a preliminary injunction. *See Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012).

On July 29, 2012, the First Amended Complaint was filed in this case, joining Adam Soltani, Imad Enchassi, Douglas Mock, and Patricia Schwagmeyer as additional plaintiffs. Plaintiffs Awad, Soltani, and Enchassi assert claims under the Free Exercise Clause and the Establishment Clause, and plaintiffs Mock and Schwagmeyer assert claims under the Equal Protection Clause, the Due Process Clause, and the Supremacy Clause. Plaintiff Soltani is an American citizen born in the United States, is a devout, lifelong Muslim, and is currently employed by CAIR-OK as Executive Director. Plaintiff Enchassi is an American citizen, a lifelong Muslim, and the Imam for the Islamic Society of Greater Oklahoma City. Plaintiffs Mock and Schwagmeyer are faculty members at the University of Oklahoma in the Department of Biology, who were married in Scotland on January

8, 1983. On August 1, 2012, plaintiff Awad moved to New York City to accept a position with another CAIR affiliate.

III.   DISCUSSION

The parties have now cross-moved for summary judgment on the sole issue in this case – whether defendants should be permanently enjoined from certifying the election results for SQ 755.

> For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (internal quotations and citation omitted).

    A.    Actual Success On The Merits[1]

        1.    Establishment Clause claim

            a.    Standing

The Tenth Circuit found that plaintiff Awad had standing to bring his Establishment Clause claim. Specifically, the Tenth Circuit held:

> Mr. Awad's allegation – that the proposed state amendment *expressly* condemns his religion and exposes him and other Muslims in Oklahoma to disfavored treatment – suffices to establish the kind of direct injury-in-fact necessary to create Establishment Clause standing.

---

[1] Because this Court finds that plaintiffs Soltani and Enchassi succeed on the merits of their Establishment Clause claim, that the Sharia law provisions in the amendment cannot be severed, and that the amendment should be enjoined in its entirety, the Court declines to address the standing of plaintiffs Awad, Mock, and Schwagmeyer or the merits of the Free Exercise Clause claim, the Equal Protection Clause claim, the Due Process Clause claim, or the Supremacy Clause claim.

*Awad*, 670 F.3d at 1123 (emphasis in original). The Tenth Circuit further held that the injury alleged by plaintiff Awad is imminent and not conjectural or hypothetical. *Id.* Finally, the Tenth Circuit held that plaintiff Awad "has shown that his alleged injuries are fairly traceable to the challenged action of defendants and are likely to be redressed by a favorable decision." *Id.* at 1124 (internal quotations and citation omitted).

In their response and cross motion for summary judgment, defendants state as follows:

> while we disagree with the Tenth Circuit's holding on [Awad's] standing to bring his Establishment Clause claim . . . we acknowledge that the Tenth Circuit found that Awad had standing. And while Awad's having moved out of state has likely deprived him of standing, Plaintiffs Enchassi, and Soltani standing allegations for purposes of the Establishment Clause are substantially similar to those considered by the Tenth Circuit.

Defendants' Response to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment and Brief in Support at 3, n.1.

Having reviewed the parties' submissions, and for the reasons set forth in the Tenth Circuit's opinion, the Court finds plaintiffs Enchassi and Soltani have standing to bring their Establishment Clause claim.

### b. Merits

The Tenth Circuit has held that the *Larson*[2] test applies to plaintiffs' Establishment Clause claim because the proposed amendment discriminates among religions. *Awad*, 670 F.3d at 1128. Further, the Tenth Circuit found that "[t]his case presents even stronger 'explicit and deliberate distinctions' among religions than the provision that warranted strict scrutiny in *Larson*." *Id.*

---

[2]*Larson v. Valente*, 456 U.S. 228 (1982).

"To survive strict scrutiny under *Larson*, [defendants] must show (1) a compelling government interest, and (2) that the amendment is 'closely fitted' to that compelling interest." *Id.* at 1129. "For an interest to be sufficiently compelling to justify a law that discriminates among religions, the interest must address an identified problem that the discrimination seeks to remedy." *Id.* Regarding the "compelling state interest" element, the Tenth Circuit found as follows:

> [Defendants] provided only one sentence on compelling interest. They simply assert that "Oklahoma certainly has a compelling interest in determining what law is applied in Oklahoma courts."
>
> Oklahoma's asserted interest is a valid state concern. But this general statement alone is not sufficient to establish a *compelling* interest for purposes of this case. [Defendants] do not identify any *actual problem* the challenged amendment seeks to solve. Indeed, they admitted at the preliminary injunction hearing that they did not know of even a single instance where an Oklahoma court had applied Sharia law or used the legal precepts of other nations or cultures, let alone that such applications or uses had resulted in concrete problems in Oklahoma.
>
> Given the lack of evidence of any concrete problem, any harm [defendants] seek to remedy with the proposed amendment is speculative at best and cannot support a compelling interest. "To sacrifice First Amendment protections for so speculative a gain is not warranted. . . ."
>
> Because [defendants] have failed to assert a compelling interest, they have failed to satisfy strict scrutiny.

*Id.* at 1130 (internal citations omitted) (emphasis in original).

Further, "[w]ithout a compelling interest based on an actual problem, the second step of the strict scrutiny analysis – whether there is a close fit with a compelling state interest – is unnecessary and not feasible." *Id.* In its opinion, the Tenth Circuit made the following observations regarding the "closely fitted" element:

> The proposed amendment goes further than preventing courts from "applying" Sharia law. The amendment forbids state courts from "considering" those laws. Even if the state could identify and support a reason to single out and restrict Sharia law in its courts, the amendment's complete ban of Sharia law is hardly an exercise of narrow tailoring. [Defendants] have not carried their burden to show why the proposed amendment is "closely fitted" to a compelling interest.

*Id.* at 1131.

In their response and cross-motion for summary judgment, defendants have submitted no additional evidence of a "compelling state interest." Further, in their response and cross-motion, defendants effectively concede that the Tenth Circuit has held that the references to Sharia law violated the Establishment Clause. Having carefully reviewed the parties' submissions, and for the same reasons set forth by the Tenth Circuit, the Court finds that defendants have failed to assert a compelling state interest and have, therefore, failed to satisfy strict scrutiny. Because defendants have failed to satisfy strict scrutiny, the Court finds that the proposed amendment's references to Sharia law violate the Establishment Clause. Accordingly, the Court finds that plaintiffs have proven actual success on the merits.

### c.    Severability

In their response and cross-motion, defendants alternatively assert that if this Court ultimately finds that SQ 755 violates the Establishment Clause, this Court should sever the offending portions of SQ 755, leaving as much of the amendment intact as possible. Defendants then suggest that SQ 755 could be parsed as follows:

> The Courts . . . when exercising their judicial authority, shall uphold and adhere to the law as provided in the United States Constitution, the Oklahoma Constitution, the United States Code, federal regulations promulgated pursuant thereto, established common law, the Oklahoma Statutes and rules promulgated pursuant thereto, and

> if necessary the law of another state of the United States ~~provided the law of the other state does not include Sharia Law~~, in making judicial decisions. The courts shall not look to the legal precepts of other nations or cultures. ~~Specifically, the courts shall not consider international law or Sharia Law.~~ The provisions of this subsection shall apply to all cases before the respective courts including, but not limited to, cases of first impression.

Defendants' Response to Plaintiffs' Motion for Summary Judgment and Cross Motion for Summary Judgment and Brief in Support at 20-21.

"A severability analysis is necessary when some, but not all, provisions of an enactment are to be condemned as unconstitutional and hence void." *Liddell v. Heavner*, 180 P.3d 1191, 1203-04 (Okla. 2008). Oklahoma's severability statute provides, in pertinent part:

> In the construction of the statutes of this state, the following rules shall be observed:
> 1. For any act enacted on or after July 1, 1989, unless there is a provision in the act that the act or any portion thereof or the application of the act shall not be severable, the provisions of every act or application of the act shall be severable. If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds:
>    a. the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or
>    b. the remaining valid provisions or applications of the act standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Okla. Stat. tit. 75, § 11a. This statute requires that a court determine the following: (1) whether the purpose of the statute would be significantly altered by severing the offending language; (2) whether the Legislature would have enacted the remainder of the statute without the offending language; and

(3) whether the non-offending language is capable of standing alone. *See Okla. Corr. Prof'l Ass'n, Inc. v. Jackson*, 280 P.3d 959, 965 (Okla. 2012).

Additionally,

> [w]hen construing a constitutional amendment that was proposed by the Legislature pursuant to Okla. Const. art. 24, § 1 and 34 O.S.2001 § 9(C), [a] Court will read the ballot title together with the text of the measure, even if the text of the measure contains no ambiguities or absurdities. [A] Court will do so because those who framed and adopted the amendment considered the text of the measure and its ballot title together. The understanding of the Legislature as the framers and of the electorate as the adopters of the constitutional amendment is the best guide for determining an amendment's meaning and scope, and such understanding is reflected in the language used in the measure and the ballot title.

*Sw. Bell Tel. Co. v. Okla. State Bd. of Equalization*, 231 P.3d 638, 642 (Okla. 2009) (internal citation omitted). Further, because the proposed amendment to the Oklahoma Constitution was a ballot initiative submitted to the Oklahoma voters, the amendment is not severable if plaintiffs can show that the voters would not have approved the amendment without the unconstitutional provisions. "[T]he intention of the voter is to be ascertained from the language of his ballot interpreted in the light of the circumstances of a public nature surrounding the election." *North v. McMahan*, 110 P. 1115, 1119 (Okla. 1910).

Having carefully reviewed the parties' submissions, the Court finds that the unconstitutional Sharia law provisions are not severable from the remainder of the proposed amendment and the whole amendment must fall. Specifically, the Court finds that the purpose of the amendment would be significantly altered by severing the offending language and that the Legislature would not have enacted the remainder of the amendment without the offending language. Having reviewed the numerous statements by the legislators who authored the amendment, it is abundantly clear that the

primary purpose of the amendment was to specifically target and outlaw Sharia law and to act as a preemptive strike against Sharia law to protect Oklahoma from a perceived "threat" of Sharia law being utilized in Oklahoma courts. That specifically banning Sharia law was the primary purpose of the amendment is further shown by the fact that in conference, Oklahoma legislators inserted an additional Sharia law provision allowing courts to consider the law of another state of the United States only if "the law of the other state does not include Sharia Law." By contrast, no similar restriction was added limiting the use of other states' law where it includes international law or the "legal precepts of other nations or cultures."

Furthermore, the Court finds that plaintiffs have shown that the voters would not have approved the amendment without the unconstitutional provisions. Having carefully reviewed the evidence submitted in support of plaintiffs' motion for summary judgment, the Court finds that the public debate, public discussions, articles, radio ads and robocalls regarding SQ 755 all primarily, and overwhelmingly, focused on the Sharia law provisions of the amendment. Given this context, the Court finds any reasonable voter would have perceived SQ 755 as a referendum on Sharia law.

Additionally, and perhaps most importantly, the issue of "legal precepts of other nations or cultures" was not included in the ballot title. Therefore, whether the Oklahoma courts should be barred from looking to the "legal precepts of other nations or cultures" was not considered by the voters when casting their vote on SQ 755. Thus, only the Oklahoma Legislature voted on the issue of "legal precepts of other nations or culture." The Court finds that severing the amendment to include a prohibition of only the "legal precepts of other nations or cultures" would result in a violation of Article 24, Section 1 of the Oklahoma Constitution. The Court further finds that severing the Sharia law provisions from the amendment, and leaving only the prohibition of

11

considering "legal precepts of other nations or cultures," would result in an amendment to the Oklahoma Constitution by implication – the intent of the voters to approve the amendment with the "legal precepts of other nations or culture" language would have to be implied. However, it is against Oklahoma law to amend the Oklahoma Constitution by implication. *See Sw. Bell Tel. Co. v. Okla. Corp. Comm'n*, 897 P.2d 1116, 1122 (Okla. 1995).

Therefore, the Court finds that severance of the unconstitutional provisions of the amendment is not proper.

B.   Irreparable Harm

"When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Awad*, 670 F.3d at 1131 (internal quotations and citation omitted). Further, the United States Supreme Court has held "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, the Court finds that plaintiffs have shown that they will suffer irreparable injury in the absence of injunctive relief.

C.   Balance Of Harms

The Tenth Circuit has held that "when the law that voters wish to enact is likely unconstitutional, their interests do not outweigh Mr. Awad's in having his constitutional rights protected." *Awad*, 670 F.3d at 1131. Because the Court has found that the Sharia law provisions of the amendment are unconstitutional, the Court finds that the balance of harms weighs even more in favor of plaintiffs' having their constitutional rights protected. Additionally, the Court finds that any harm that would result from permanently enjoining the certification of the election results is

further minimized in light of the undisputed fact that the amendment at issue was to be a preventative measure and that the concern that it seeks to address has yet to occur.[3]

Accordingly, the Court finds the threatened injury to plaintiffs outweighs the harm that a permanent injunction may cause defendants.

D.  Public Interest

Finally, the Court finds that entry of a permanent injunction enjoining defendants from certifying the election results for SQ 755 would not be adverse to the public interest. While the public has an interest in the will of the voters being carried out, the Court finds that the public has a more profound and long-term interest in upholding an individual's constitutional rights. As the Sixth Circuit has stated, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). Accordingly, the Court finds that plaintiffs have shown that a permanent injunction would not be adverse to the public interest.

---

[3]Defendants admitted at the preliminary injunction hearing that they did not know of any instance where an Oklahoma court had applied Sharia law or used the legal precepts of other nations or cultures.

IV.     CONCLUSION

Therefore, for the reasons set forth above, the Court GRANTS plaintiffs' Motion for Summary Judgment [docket no. 72], DENIES defendants' Cross Motion for Summary Judgment [docket no. 78], and FINDS that defendants should be permanently enjoined from certifying the election results for SQ 755.

**IT IS SO ORDERED this 15th day of August, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE