# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| MUNEER AWAD, ADAM SOLTANI, IMAD ENCHASSI, DOUGLAS MOCK, PATRICIA SCHWAGMEYER, | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| -vs- | ) ) | **No. CIV-2010-1186-M** |
| PAUL ZIRIAX, Secretary; STEVE CURRY, Chairman;  TOM MONTGOMERY; DIANE SPURLOCK; members of the Oklahoma State Election Board, | ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

# BRIEF OF PLAINTIFFS IN SUPPORT
# OF MOTION FOR ATTORNEY FEES

**GADEIR ABBAS**\* VBA #81161
Council on American Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C.  20003
Email: gabbas@cair.com

**DANIEL MACH** DC #461652
**HEATHER L. WEAVER** DC #495582
American Civil Liberties Union
        Foundation
915 15th Street, N.W.
Washington, D.C. 20005
(202) 675-2330
Email: dmach@aclu.org
        hweaver@aclu.org

**MICHEAL SALEM** OBA #7876
*Salem Law Offices*
101 East Gray, Suite C
Norman, Oklahoma  73069-7257
(405)  366-1234
Email: msalem@msalemlaw.com

**CHANDRA BHATNAGAR**
NYSB #4136966
American Civil Liberties Union
125 Broad Street, 18th Floor
New York, N.Y. 10004
(212) 519-7840
Email: cbhatnagar@aclu.org

ATTORNEYS FOR ALL PLAINTIFFS

December 1, 2013
\*(Admitted in Virginia only; not admitted in D.C.)

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FEDERAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATE AND OTHER AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     PLAINTIFFS' FEES ENTITLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      PLAINTIFFS WON SUBSTANTIAL RELIEF AND ARE PREVAILING
                PARTIES ENTITLED TO FULL AWARD OF ATTORNEY FEES, COSTS,
                AND LITIGATION EXPENSES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      PLAINTIFFS' ATTORNEYS' HOURS ARE REASONABLE. . . . . . . . . 8

                (1)     THE COMPLEXITY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . 9

                (2)     REASONABLE STRATEGIES PURSUED . . . . . . . . . . . . . . . . 12

                (3)     RESPONSES NECESSITATED BY THE MANEUVERING OF THE
                        OTHER SIDE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                (4)     DUPLICATION OF EFFORT . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.      PLAINTIFFS' ATTORNEYS ARE ENTITLED TO REASONABLE
                HOURLY RATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                (1)     The hourly rate requested for Mr. Salem is reasonable . . . . . . . . 21

                (2)     The hourly rate requested for Mr. Mach is reasonable . . . . . . . . . 23

                (3)     The hourly rate requested for Professor Thai is reasonable . . . . . . 24

                (4)     The hourly rates requested for Ms. Weaver and Mr. Bhatnager are
                        reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

(5)     The hourly rates requested for Mr. Abbas and Mr. Liesenfeld are reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.     PLAINTIFFS' REQUESTED NON-TAXABLE EXPENSES ARE REASONABLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

SIGNATURE OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# TABLE OF CASES

**Page**

Am. Atheists, Inc. v. City of Starke, 509 F.Supp.2d 1221 (M.D. Fla. 2007) . . . . . . . . 29

Amer. Fidelity Co. Employee Savings Plan v. Haws, No. CIV-06-848-M,
2008 WL 974705 (W.D. Okla. Apr. 8, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Awad v. Ziriax, 670 F.3d 1111 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

Ballard v. Muskogee Regional Medical Center, 238 F.3d 1250 (10th Cir. 2001) . . . . . . . 5

Bee v. Greaves, 910 F.2d 686 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 28

Brown v. Gray, 227 F.3d 1278 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Case v. Unified School Dist. No. 233, Johnson County, Kan.,
157 F.3d 1243 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Cooper v. State of Utah, 894 F.2d 1169 (10th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 28

D.H. v. Ponca City Indep. Sch. Dist., No. 06-CV-523-CVE-SAJ,
2007 WL 2670105 (N.D. Okla. Sept. 7, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Ellis v. University of Kansas Medical Center,
163 F.3d 1186 (Tenth Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba,
462 U.S. 611, 103 S.Ct. 2591 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Green v. Haskell County, 568 F.3d 784, reh'g denied, 574 F.3d 1235
(10th Cir. 2009), cert. denied, 130 S. Ct. 1687 (2010) . . . . . . . . . . . . . . . . . . . . . . . 10, 23

Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933 (1983) . . . . . . . . . . . . . . . . . . . . . 7-9

Herdahl v. Pontotoc County Sch. Dist., 964 F. Supp. 1113 (N.D. Miss. 1997) . . . . . . . 20

Jager v. Douglas County Sch. Dist., 862 F.2d 824 (11th Cir. 1989) . . . . . . . . . . . . . . . 11

Johnson v. City of Tulsa, No. 94-CV-39-H (M), 2003 WL 24015152
(N.D. Okla. Aug. 29, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lamb. v. Scott's Miracle-Gro Co., No. 06-CV-32-JHP, 2008 WL 731234
(E.D. Okla. Mar. 17, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Larson v. Valente, 456 U.S. 228, 102 S.Ct. 1673 (1982) . . . . . . . . . . . . . . . . . . 10, 15, 18

Lee v. Weisman, 505 U.S. 577, 112 S.Ct. 2649 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lemon v. Kurtzman, 403 U.S. 602, 91 S.Ct. 2105 (1971) . . . . . . . . . . . . . . . . . . . 10, 14

Lenard v. Argento, 808 F.2d 1242 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Lockard v. Pizza Hut, Inc., 162 F.3d 1062 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . 20

Love v. City of Cheyenne, 620 F.2d 235 (10th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . 8

McCreary County, Ky. v. American Civil Liberties Union of Ky.,
545 U.S. 844, 125 S.Ct. 2722 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

McKissick v. Yuen, 618 F.3d 1177 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MidAmer. Fed. Savings & Loan Assoc. v. Shearson/Amer. Express, Inc.,
962 F.2d 1470 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Myers v. Loudoun County Public Schools, 418 F.3d 395 (4th Cir. 2005) . . . . . . . . . . . 11

Newdow v. Rio Linda Union Sch, Dist., 597 F.3d 1007 (9th Cir. 2010) . . . . . . . . . . . 11

Newman v. Piggie Park Enterprise, 390 U.S. 400, 88 S.Ct. 964 (1968) . . . . . . . . . . . . 5

Okla. Natural Gas Co. v. Apache Corp., 355 F.Supp. 2d 1246
(N.D. Okla. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Oxford v. Beaumont Indep. Sch. Dist., No. CIVA-196-CV-706,
2002 WL 34188379 (E.D. Tex. Dec. 19, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Ramos v. Lamm, 713 F.2d 546 (10th Cir., 1983) . . . . . . . . . . . . . . . . . . . . . . 4, 20-23, 27

Renfro v. City of Emporia, Kan., 948 F.2d 1529 (10th Cir. 1991) . . . . . . . . . . . . . . . . . . 6

Revocable Trust of Davis v. Kan. City S. Rwy. Co., No. CIV-05-331-KEW,
2009 WL 3150409 (E.D. Okla. Sept. 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Robinson v. City of Edmond, 160 F.3d 1275 (10th Cir. 1998) . . . . . . . . . . . . 8, 11, 22, 28

Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848 (1st Cir. 1998) . . . . . . . . . . . . . 19

Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819,
115 S.Ct. 2510 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sussman v. Patterson, 108 F.3d 1206 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 28

Texas State Teachers Ass'n v. Garland Indep.  Sch. Dist., 489 U.S. 782,
109 S.Ct. 1486 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

The Paquete Habana, 175 U.S. 677, 20 S.Ct. 290 (1900) . . . . . . . . . . . . . . . . . . . . . . . . . 2

Valley View Angus Ranch v. Duke Energy Field Servs., No. CIV-04-191-D,
2009 WL 2778912, (W.D. Okla. Aug. 28, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Van Orden v. Perry, 545 U.S. 677, 125 S.Ct. 2854 (2005) . . . . . . . . . . . . . . . . . . . . . . . 10

Voda v. Cordis Corp., No. CIV-03-1512-L, 2006 WL 2570614
(W.D. Okla. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Zinna v. Congrove, 680 F.3d 1236 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# FEDERAL AUTHORITY

**Page**

28 U.S.C. §1920 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

42 U.S.C. §1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 28

Federal Rule of Civil Procedure 54(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

Federal Rule of Evidence 201(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

First Amendment to the Constitution of the United States . . . . . . . . . . . . . . . 1, 22-24, 26

Fourteenth Amendment to the Constitution
of the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 9, 13

United States Const., Art. VI, Section 1, Cl. 2
(Supremacy Clause) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6, 9, 12, 13, 17, 18

Western District Local Civil Rule 54.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8

# STATE AND OTHER AUTHORITY

**Page**

75 Okla.Stat. §11a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Antonin Scalia and Bryan Garner, MAKING YOUR CASE,
THE ART OF PERSUADING JUDGES, (Thomson/West, 2008) . . . . . . . . . . . . . . . . . . . . . . 19

Bryan Garner, THE ELEMENTS OF LEGAL STYLE (Oxford, 2002) . . . . . . . . . . . . . . . . . . 19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MUNEER AWAD, ADAM SOLTANI,  )
IMAD ENCHASSI, DOUGLAS MOCK,  )
PATRICIA SCHWAGMEYER,  )
 )
        Plaintiffs,  )
 )
-vs-  )    **No. CIV-2010-1186-M**
 )
PAUL ZIRIAX, Secretary; STEVE  )
CURRY, Chairman;  TOM  )
MONTGOMERY; DIANE SPURLOCK;  )
members of the Oklahoma State Election  )
Board,  )
 )
        Defendants.  )

## BRIEF OF PLAINTIFFS IN SUPPORT OF MOTION FOR ATTORNEY FEES

### I.    INTRODUCTION

This action was brought by Plaintiffs to enforce civil rights under the First and Fourteen Amendments and the Supremacy Clause of the Constitution. The action was commenced *pro se* by Plaintiff Muneer Awad with one goal: Stop the certification of anti-Muslim language in State Question 755 ("SQ755"), a popular referendum passed by the voters with 70% approval, and prevent its embedding in the Oklahoma Constitution.

The stakes could not have been higher. Had Mr. Awad failed at any point, Oklahoma would have enshrined language in its organic organizing document which condemned a religious belief. As noted in Plaintiffs' Motion for Summary Judgment, legislators and proponents of SQ755 made their anti-Islamic sentiments crystal clear, reacting not to any real

1

or even threatened concern, but intending to instead to brand Oklahoma as an outpost for bigotry. The proponents contended SQ755 was a "pre-emptive strike" against a non-existent crisis to prevent any consideration of Sharia Law by an Oklahoma Court or adjudicative agency, essentially erasing any religious and cultural references to Islam from Oklahoma law.

Although this Court found on Summary Judgment that Sharia Law was the primary target of legislators and its proponents, SQ755 did not stop at condemnation of an entire religious belief. It also prohibited consideration and application of international law, putting Oklahoma on a direct collision course with the Supremacy Clause of the Constitution: "International law is part of our law, and must be ascertained and administered by the courts of justice of appropriate jurisdiction . . ." *See The Paquete Habana*, 175 U.S. 677, 700 (1900); *see also First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 622-23 (1983). Simply stated, Oklahoma cannot reject that which the Constitution makes part of our law.

It is difficult to determine whether SQ755's xenophobic ban on the "legal precepts of other nations or cultures" would be a more shameful condemnation of that which is different or more harmful to the well-being of the people of Oklahoma. Among its anticipated effects, this ban would have put the validity of foreign marriages and foreign adoptions in jeopardy throughout Oklahoma. It would have isolated Oklahoma businesses from international and foreign commerce by depriving them of the choice to deal with foreign businesses under laws from outside the United States for their agreements. Such an

obstacle to international commerce would create a competitive disadvantage for Oklahoma businesses and anyone who wanted to do business in Oklahoma with foreign entities.

Mr. Awad not only achieved his goal of preventing SQ755's anti-Sharia rhetoric from becoming law, his lawsuit successfully prevented all three prongs of SQ755 from becoming law. In no small way Oklahoma is beholden to the Plaintiffs of this action for rescuing it from itself.

Now time has come for the reckoning required by federal law when an unconstitutional measure has been permanently enjoined.

Mr. Awad began the litigation *pro se* on November 4, 2010 with the assistance of Gadeir Abbas, his fellow employee at CAIR. (Doc. 001). He persuaded this Court to grant a Temporary Restraining Order on November 8, 2010 stopping Defendants from certification of SQ755. (Doc. 007).  Joined by counsel Mr. Awad successfully obtained a preliminary injunction on November 29, 2010. (Doc. 020).

Defendants' appeal of the preliminary injunction failed. *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012); (Doc. 039). Mr. Awad then amended his Complaint to challenge all three prongs of SQ755, with the addition of parallel plaintiffs to his claims against the anti-Sharia Law prong and of plaintiffs to bring related claims against the ban on international law and the "legal precepts of other nations or cultures." (Doc. 046).

On summary judgment and cross-motion for summary judgment, this Court permanently enjoined certification of SQ755 in its entirety. The relief obtained may be characterized as significant and complete, an excellent result.

The prevailing Plaintiffs now seek compensation for their attorneys as well as cost and expense reimbursement as permitted by 42 U.S.C. §1988(b), 28 U.S.C. §1920, Fed.R.Cv.P. 54(d), and LCvR 54.1. The State of Oklahoma is indebted to Mr. Awad and the prevailing Plaintiffs not only for attorney fees, but for preventing the embarassment of writing a constitutional evil into its fundamental law.  The result of this action makes it clear this litigation has significantly benefitted the State of Oklahoma whether or not her citizens can appreciate the significance of those benefits.

As a part of their fee request Plaintiffs also seek post-judgment interest calculated from the "date the fees [are] meaningfully ascertained and included in a final appealable judgment." *See MidAmer. Fed. Savings & Loan Assoc. v. Shearson/Amer. Express, Inc.*, 962 F.2d 1470, 1476 (10th Cir. 2002).

## II.    PLAINTIFFS' FEES ENTITLEMENT

### A.    PLAINTIFFS WON SUBSTANTIAL RELIEF AND ARE PREVAILING PARTIES ENTITLED TO FULL AWARD OF ATTORNEY FEES, COSTS, AND LITIGATION EXPENSES.

The *Fees Act* (42 U.S.C. §1988) has a principal purpose of the encouragement of enforcement of civil rights by individual plaintiffs acting as "private attorneys general." *See Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793, 109 S.Ct. 1486 (1989)(observing that in enacting Section 1988, Congress intended to encourage plaintiffs to act as private attorneys general).

Plaintiffs are entitled to reasonable attorneys' fees as prevailing parties in this action. *Ramos v. Lamm*, 713 F.2d 546 (10th Cir., 1983). It is clear that Plaintiffs are

prevailing parties in consideration of the substantial injunctive relief[1] granted by this Court when nobody else stepped forward to challenge the discriminatory constitutional amendment approved by the voters and which hung on the cusp of certification by the Defendant Election Board members.[2]

Plaintiffs are entitled to attorneys' fees when they prevail on any significant issue in litigation and obtain some of the relief they sought. *Texas State Teachers Ass'n*, 489 U.S. at 790-91. The key to determining whether attorneys' fees should be awarded is "whether some degree of success" has been obtained. *Id*. at 489 U.S. at 789.

The Tenth Circuit has applied three criteria to determine whether a prevailing party achieved enough success to be entitled to an award of attorney fees:

> "The 'relevant indicia of success' in such cases are: (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose of the litigation."

*Ballard v. Muskogee Regional Medical Center*, 238 F.3d 1250, 1254 (10th Cir. 2001). *See also Zinna v. Congrove*, 680 F.3d 1236, 1239-40 (10th Cir. 2012).

---

[1] An injunction is a substantial form of relief justifying an attorney fee to be taxed as costs. "It follows that one who succeeds in obtaining an injunction . . . should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Newman v. Piggie Park Enterprise*, 390 U.S. 400, 402, 88 S.Ct. 964 (1968). In *Newman*, the Court held that no special circumstances were present. *Footnote 5* points out many frivolous defenses asserted in opposition to Plaintiff's right to fee recovery, including claims that the law was unconstitutional, contravenes the will of God, and constituted an interference with the free exercise of religion. The footnote suggests that almost as a matter of course a Plaintiff is entitled to attorneys fees upon issuance of an injunction by the Court.

[2] When Plaintiffs achieve a benefit not limited just to themselves, there should be compensation for having produced the wider benefit. See *Lenard v. Argento*, 808 F.2d 1242, 1248 (7th Cir., 1987) (". . . if a civil rights suit generates what an economist calls an 'external benefit' . . . , there should be compensation for having created it.")

In this case, all three factors weigh heavily in favor of a full fee award. There is little question that the final judgment not only achieved but exceeded the recovery initially sought. The significance of the legal issue was great, and the public purpose of the litigation benefitted not only those of the Islamic faith, but all of Oklahoma in the rejection of all three prongs of SQ755.

This Court enjoined certification of SQ755 in its entirety based upon its severance analysis and refusal to grant "amendment by implication" for the ban on "legal precepts of other nations or cultures." Plaintiffs are also entitled to compensation for work on additional propositions that the anti-Sharia ban violated the Free Exercise Clause, and that both the international law and foreign law bans were unconstitutional as contrary to the Supremacy Clause, and violations of the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Although these claims were not separately adjudicated by the Court, they arose out of a common core of facts in that all were part of SQ755 and were related claims under alternative theories[3] of possible invalidity:

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide

---

[3] Plaintiffs could hardly rely only upon a factually driven severance analysis for summary judgment to strike down the entire Amendment. Had the Court determined on summary judgment that the Sharia Law ban could be severed and Plaintiffs had not included additional separate propositions in their briefing, they well might have been precluded from the use of these separate propositions at trial since a failure to include the argument at summary judgment could constitute a waiver. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010)(Intentional failure to develop argument adequately in the district court was waiver as opposed to forfeiture if failure was unintentional); *See also Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1534 (10th Cir. 1991) ("[C]ross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties").

the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933 (1983).

The Supreme Court does not require strict review in separating time between prevailing and

nonprevailing propositions:

We recognize that there is no certain method of determining when claims are "related" or "unrelated." Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.

*Hensley v. Eckerhart*, 461 U.S. at 437, Fn. 12.

The additional factual and legally related propositions advanced by Plaintiffs were not

determined to be lacking merit, but instead once this Court determined that SQ755 should

be enjoined from certification in its entirety the case was over with no need to analyze

remaining propositions. In the same fashion the Tenth Circuit did not stop to analyze

Plaintiff's Free Exercise claim once it determined the District Court properly entered a

preliminary injunction against Defendants based only upon the Establishment Clause. *Awad*

*v. Ziriax*, 670 F.3d at 1119 ("Because Mr. Awad's Establishment Clause claim provides

sufficient grounds to uphold the preliminary injunction, we affirm without reaching Mr. Awad's Free Exercise claim").

As prevailing parties Plaintiffs are now entitled, pursuant to Section 1988, "to seek reimbursement for [their] attorney[s'] fees, to the extent the fees are reasonable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) ("Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a prevailing party.") (internal quotation marks and citation omitted).  Plaintiffs are also entitled to and related non-taxable expenses.[4]

"To determine a reasonable attorneys fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Case v. Unified School Dist. No. 233, Johnson County, Kan*., 157 F.3d 1243, 1249 (10th Cir. 1998).

## B.    PLAINTIFFS' ATTORNEYS' HOURS ARE REASONABLE.

The lodestar amount is presumptively reasonable, and where, as here, a prevailing party "achieves most or all of what [was] aimed for in a civil rights lawsuit," the party's attorney "should receive 'a fully compensatory fee.'" *Robinson*, 160 F.3d at 1283 (quoting

---

[4] Plaintiffs seek costs pursuant to 28 U.S.C. § 1920 and Fed.R.Civ.Pro. 54(d)(1). As required by LCvR 54.1, Plaintiffs have filed a Bill of Costs and supporting brief separately from this motion.  However, Plaintiffs respectfully request that any costs set forth in the Bill of Costs, which this Court deems non-taxable, instead be awarded as a recoverable expense pursuant to 42 U.S.C. 1988(b). *Brown v. Gray*, 227 F.3d 1278, 1297-98 (10th Cir. 2000) (Remand to consider expenses denied as costs included as attorney fees under Section 1988).

Mindful that a "request for attorney's fees should not result in a second major litigation" [*Hensley v. Eckerhart*, 461 U.S. at 437), Plaintiffs respectfully request leave to supplement this motion in the future to seek any additional fees associated with "work done in resolving the fee issue itself." *Love v. City of Cheyenne*, 620 F.2d 235, 237 (10th Cir.1980).

*Hensley*) (holding that district court's reduction of lodestar amount in Establishment Clause case was "legally indefensible in light of the fact that all of the unsuccessful claims were intertwined with the successful claims through a common core of facts or related legal theories" and the plaintiff had achieved "the principal goal of her lawsuit").

The court is first obligated to determine "the number of hours reasonably reasonably spent by counsel for the party seeking the fees." *Case v. Unified School Dist.*, 157 F.3d at 1250.

In determining the reasonable number of hours court make a particularized examination of each individual case:

> In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon facts such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side. Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services.

*Case v. Unified School Dist.*, 157 F.3d at 1250.

### (1)   THE COMPLEXITY OF THE CASE.

Although resolved under the Establishment Clause and a state severance analysis including "amendment by implication," Plaintiffs' appellate briefs and the Motion for Summary Judgment in this case raised other complex issues under the Free Exercise Clause, Supremacy Clause, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

First, Establishment Clause litigation itself is generally very complex. Issues presented in this case relating to government condemnation of a particular religion were difficult because there is little case law guidance when a State expressly condemns a single religion. With its multiple claims under the Constitution, this case was simply *sui generis*.

The thoroughness and complexity of the Tenth Circuit's thirty-nine-page opinion (Doc. 039) demonstrates the care necessary to navigate the intersection of the Establishment Clause and SQ755.

While Plaintiffs' counsel believed their analysis was correct, Establishment Clause jurisprudence in both the Tenth Circuit and the Supreme Court is fractured, at best.[5] For example, during the appeal Plaintiff was required to augment *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105 (1971) with *Larson v. Valente*, 456 U.S. 228, 102 S.Ct. 1673 (1982) after a request for briefs from the Tenth Circuit.

Establishment Clause cases, as a general rule, often require an enormous time commitment because their outcomes are inextricably tied to particular, unique facts. *See, e.g.*, *McCreary County. v. ACLU*, 545 U.S. at 867. ("[U]nder the Establishment Clause, detail is key."); *Van Orden v. Perry*, 545 U.S. at 700 (Breyer, J., concurring) ("no exact formula can dictate a resolution to such fact-intensive cases"); *Lee v. Weisman*, 505 U.S. 577, 597, 112 S.Ct. 2649 (1992) ("Our Establishment Clause jurisprudence remains a delicate and fact-sensitive one."); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 847 (1995)

---

[5] *Compare Green v. Haskell County*, 568 F.3d 784, 792-93, *reh'g denied*, 574 F.3d 1235 (10th Cir. 2009), *cert. denied,* 130 S. Ct. 1687 (2010) with *McCreary County, Ky. v. American Civil Liberties Union of Ky.*, 545 U.S. 844, 125 S.Ct. 2722 (2005) and *Van Orden v. Perry*, 545 U.S. 677, 125 S.Ct. 2854 (2005).

(O'Connor, J., concurring) ("[R]esolution . . . depends on the hard task of judging — sifting through the details and determining whether the challenged program offends the Establishment Clause.").

The Tenth Circuit has recognized Establishment Clause jurisprudence as "an area notorious for its difficult case law," and this factor should be afforded weight in a court's assessment of the reasonableness of the number of hours claimed in a motion for attorneys' fees.[6] *See Robinson*, 160 F.3d at 1282 (rejecting district court's characterization of Establishment Clause case as "fairly simple," and pointing to the "reams of legal analysis" generated, "an important circuit split," a petition for writ of *certiorari*, and a drawn-out litigation process at the district court and court of appeals levels). The level of analysis in this case is not much different.

The expedited circumstances of the hearing on the preliminary injunction required Plaintiff to quickly sift and marshal evidence for presentation. At the time of summary judgment, significant other detail was marshaled and formed the basis for this Court's severance analysis. (Docs. 073-00 to 073-70).

Questions that arose in direct challenge to the international law ban were not of the same complexity, but finding appropriate parties and claims to maintain standing was

---

[6] *See also, e.g.*, *Newdow v. Rio Linda Union Sch, Dist.*, 597 F.3d 1007, 1048 (9th Cir. 2010) (referring to the "complex case law regarding the Establishment Clause"); *Myers v. Loudoun County Public Schools*, 418 F.3d 395, 410 (4th Cir. 2005) (Motz, J., concurring) (noting "the Supreme Court's complicated Establishment Clause jurisprudence"); *Jager v. Douglas County Sch. Dist.*, 862 F.2d 824, 841 (11th Cir. 1989) (Roney, J., dissenting) ("the caselaw developed under the Establishment Clause has grown very complex, and there seems to exist a case for and against each proposition furthered by any party.").

11

complicated by the nature of the ballot petition. Defendants still challenged Plaintiffs'

argument by contending that the Supremacy Clause was a "choice of law" provision.[7]

The time records of Micheal Salem will indicate the various issues that were

considered before finally settling on parties and claims relating to proof of the validity of a

foreign marriage under the Hague Apostille Convention.

The same difficulty arose with regard to a direct challenge to the ban on "the legal

precepts of other nations or cultures." One factual difficulty was finding a claim based upon

foreign law or culture that could reasonably be expected to be "adjudicated" before an

Oklahoma court or adjudicative agency.

The complexities of this action were both legal and factual. The factual complexity

was weighing the evidence and analysis presented to the Court at the hearing on preliminary

injunction and Motion for Summary Judgment. The complexity of the legal questions are

manifest in the filings and hearings in this Court and the Tenth Circuit.

### (2)     REASONABLE STRATEGIES PURSUED.

Having only one chance to get it right, Plaintiffs employed every reasonable strategy

to ensure that no part of SQ755 became law. Plaintiffs concluded it was necessary to assert

stand-alone claims of unconstitutionality against the second and third prongs with separate

Plaintiffs raising issues of the Supremacy Clause and the Equal Protection and Due Process

Clauses.  Having some reasonable assurance from the Tenth Circuit's decision of a

substantial likelihood of prevailing on the merits under the Establishment Clause as to the

---

[7] This does not even take into account the legitimate concerns of Plaintiff's counsel to properly establish or maintain standing for Plaintiff Awad to demonstrate the necessary "injury in fact" to maintain a challenge.

Sharia Law prong of SQ755 and the Tenth Circuit's decision that it was unnecessary to address Plaintiff Awad's Free Exercise claim during the appeal, Plaintiff added no significant additional time to reliance on Free Exercise once the case returned to this Court, resulting in a saving of legal effort.

The state law of severance does not allow the court without analysis to "presume the Legislature would have enacted the remaining valid provisions without the void one," or conclude that "the remaining valid provisions or applications of the act, standing alone, are incomplete and incapable of being executed in accordance with legislative intent." 75 Okla. Stat. §11a. Had the court determined that some challenged portion of the statute could survive severance, the Court could have taken up separate challenges involving Equal Protection, Due Process, and Supremacy Clauses. Such a litigation strategy was not unreasonable.

### (3) RESPONSES NECESSITATED BY THE MANEUVERING OF THE OTHER SIDE.

Defendants opposed the temporary restraining order, opposed the preliminary injunction, and appealed this Court's grant of the preliminary injunction to the Tenth Circuit.

They filed Opening and Reply Briefs in the Tenth Circuit.[8] Defendants' Docketing Statement contained 13 propositions on appeal. (9821891 - Docketing statement, pp. 4-5).

The Opening Brief took few or no issues off the table as Defendants raised claims of lack of standing, ripeness, failure to meet a showing of irreparable harm, failure to make a strong showing of threatened injury that outweighed the injury to the Board and the electorate, failure to show that the injunction was in the public interest, and failure to make a strong showing of substantial likelihood of success on the merits. (9852634 - Appellant-Defendants' Brief).

In concluding there was no showing that SQ755 violated the Establishment Clause, they separately analyzed each of the *Lemon* criteria of purpose, effect, entanglement, and Justice O'Connor's endorsement theory. Defendants also strenuously challenged the District Court's determination that SQ755 violated the Free Exercise Clause and also challenged this

---

[8] For the Court's review, Plaintiffs reference the following appellate filings and briefs submitted in the Tenth Circuit:

9821891 Docketing statement filed by Defendants.

9852634 Appellants' brief filed by Mr. Thomas Prince, Ms. Susan Turpen, Mr. Ramon Watkins and Mr. Paul Ziriax.

9865207 Appellee-Respondent's brief filed by Mr. Muneer Awad.

9872613 Appellants' reply brief filed.

9915443 Appellants' supplemental brief filed by Mr. Thomas Prince, Ms. Susan Turpen, Mr. Ramon Watkins and Mr. Paul Ziriax.

9915608 Appellee's supplemental brief filed by Mr. Muneer Awad.

The Court is asked to take judicial notice of these filings.  *See* Fed.R.Evid. 201(c)(2)).

Court's finding that "Sharia Law" was not law. The Opening Brief also claimed error regarding the admission into evidence of emails, faxes, and other communications received by Mr. Awad relating to the campaign to pass SQ755 and Mr. Awad's litigation. Defendants asked for oral argument.

In the face of such issues, Plaintiff appropriately and carefully responded to the arguments of the Defendants. (9865207 Appellee-Respondent's brief). The Brief included attachments which contained the redacted will of Mr. Awad, the records of the Secretary of State regarding SQ755's passage by the Legislature and the subsequent proceedings that got it to the ballot. (Doc. 017-01; 9865207-03 Appellee-Respondent's brief - Attach. 3, HJR 1056 - SQ755).

Defendants filed a Reply Brief (9872613 Appellants' reply brief) contending that the districtcCourt incorrectly presumed to know how state courts would interpret SQ755, again argued against Mr. Awad's standing, contended that SQ755 does not impair Mr. Awad's practice of Islam, does not foster an excessive entanglement between government and religion, and that Mr. Awad's harm was speculative and did not outweigh the harm to the public interest. Defendants also took swipes at several arguments of the amici supporting Mr. Awad contending the arguments were not raised in the trial court.

After oral argument the Circuit asked for additional briefing on the application of *Larson* to the case. Each party filed a brief. (9915443 Appellants' supplemental brief and (9915608 Appellee's supplemental brief).

15

Besides challenges brought by Defendants,[9] Plaintiff also had to contend with opposition amicus briefs filed in both the District Court and in the Tenth Circuit. For example, prior to the preliminary hearing an amicus brief was submitted by the U.S. Border Control, United States Border Control Foundation, Lincoln Institute for Research and Education, and the Conservative Legal Defense and Education Fund. (Doc. 013). On appeal, an amicus brief was filed by the Foundation for Moral Law. (9856480 Amicus Curiae brief filed by Foundation of Moral Law). There were also other amicus briefs on appeal filed in support of Plaintiffs.

This Court can analyze the opposition raised by Defendants on summary judgment by reference to the records regarding Plaintiffs' Motion for Summary Judgment (Doc 073); Defendants' Cross-Motion for Summary Judgment (Doc. 078); and Plaintiffs' Response to Defendants' Motion for Summary Judgment and Reply. (Doc. 083).

### (4)    DUPLICATION OF EFFORT.

It should not be surprising that Plaintiffs' counsel had to spend hundreds of hours throughout the course of three years litigating Plaintiffs' claims when multiple claims were before the Court including the religious freedom of the Islamic Plaintiffs, while the State of Oklahoma promoted religious discrimination and bigotry, and the case was the focus of

---

[9]    Despite the spirited opposition of Defendants, counsel for Plaintiffs wish to acknowledge the professional cooperation of Assistant Attorneys General Scott Boughton and Janet Preslar. The undersigned counsel is especially grateful for the courtesy and cooperation of Solicitor General Patrick Wyrick during times that the undersigned counsel was indisposed and which necessitated extension of scheduled deadlines.

spirited defense and public interest. Plaintiffs' counsel seek reimbursement only for a reasonable number of hours.

At various times seven attorneys contributed to the prosecution of this action. Some special attention was necessitated by the expedited proceeding of a preliminary injunction hearing.  Other counsel were included for the benefit of special expertise in a case of first impression involving complex questions of constitutional law under the Establishment and Free Exercise Clauses, the Supremacy Clause, and the Due Process and Equal Protection Clauses.

The several attorneys also took into account the determination that the best reasonable strategy was to challenge the Amendment with related claims as well as a severance analysis if the Sharia Law prong was declared unconstitutional.

Micheal Salem was lead counsel both in the District Court and on appeal. His declaration details significant experience in civil rights cases and Establishment Clause cases. When he was joined by other counsel after the preliminary injunction hearing various measures were taken to minimize the number of hours expended.

First, as noted by time records of all the attorneys, each made significant cuts from the actual time spent on the case or simply did not record otherwise compensable time.  The primary purpose was to show this court contemporaneous and later reflective adjustments made to distinguish " 'raw' time from 'hard' or 'billable' time." *Bee v. Greaves*, 910 F.2d 686, 689 (10th Cir. 1990). This intentional reduction of time is not based upon any belief that the time was unreasonable or excessive, only that it reflects an effort to comply in good faith,

and to the greatest extent possible, with the Tenth Circuit's requirement to exercise billing judgment in order to arrive at a reasonable lodestar amount.

Second, in the drafting of documents, only one person at a time worked on any legal brief, proposition, or project. By way of example, as illustrated by time records submitted as exhibits to the various declarations, Micheal Salem produced an initial rough draft of the appellate brief which was then edited by Ms. Weaver. The Brief was then returned to Salem for final revisions and proofing. Dan Mach drafted the Supplemental Brief on the application of *Larson* as requested by the Tenth Circuit. Salem made final revisions before filing. Salem separately drafted the Amended Complaint which was reviewed by Liesenfeld.

As a part of Plaintiffs' Motion for Summary Judgment, Heather Weaver prepared the severance proposition including the statement of uncontroverted facts involving severance. Salem separately prepared drafts of the other propositions regarding the Supremacy Clause, Equal Protection, Due Process, a separate severance proposition and the statement of uncontroverted facts associated with these additional propositions. Salem integrated these propositions into a single brief. Heather Weaver revised the integrated brief before returning it to Salem for final editing, revision, and proofing.

Mr. Abbas produced an initial rough draft of the Response to Defendants' Cross-Motion for Summary Judgment. Salem added additional propositions and revised it to its eventual final form.

During this process of document preparation, as drafts were produced and circulated to co-counsel, suggestions for changes were funneled back to the single person then in control of the Brief for review and consideration. Final review of most documents was done

by Salem aided by Liesenfeld and Weaver in part with proposed revisions, proofing, and cite checking provided by those co-counsel who reviewed the documents and submitted suggestions.

Multiple revisions of briefs are not unusual.  As noted by Salem, some documents in this case went through ten or more revisions. The act of multiple revision is a hallmark of good writing.  The practice of writing, revising, revising again, and finally revising, as well as the practice of finding additional parties to read through the brief and provide commentary is encouraged by Justice Antonin Scalia and Bryan Garner[10] in their book, MAKING YOUR CASE, THE ART OF PERSUADING JUDGES, (Thomson/West, 2008), p. 80.

Counsel communicated by email and occasional telephone conference calls. Telephonic consultation is not necessarily duplicative, but instead may be the most efficient way to quickly discuss or formulate possible strategy.[11]

---

[10] In his book THE ELEMENTS OF LEGAL STYLE (Oxford, 2002) (p. 218-19), Bryan Garner advises, "Revise, revise, revise." Garner quotes Justice Louis Brandeis as often reworking his opinions 15 to 20 times. He identifies the skill of revising as "knowing what to reject."

Garner also advises the writer not to entirely rely upon others for proofreading. ("Perhaps lawyers don't feel justified in billing clients at high hourly rates merely to correct spelling . . . But professionalism demands that you take these pains. Finding only misspellings will be rare–more likely, even in the fifth or sixth read-through, you will find some way of making a substantive improvement").

This process of revision during final read-throughs in this case significantly benefitted from the deep experience and skill of Ms. Weaver and Mr. Liesenfeld who each provided revisions, edits, corrections, and proofreading of the briefs prepared in this case.

[11] Not all time spent by two attorneys is necessarily duplicative:

We note that "[t]ime spent by two attorneys on the same general task is not ... per se duplicative.  Careful preparation often requires collaboration and rehearsal...." *Rodriguez-Hernandez [v. Miranda-Velez]*, 132 F.3d [848] at 860

(continued...)

Individual attorneys separately performed legal research which became part of strategy discussions during the infrequent conference calls.

## C.   PLAINTIFFS' ATTORNEYS ARE ENTITLED TO REASONABLE HOURLY RATES.

The hourly rates proposed by Plaintiffs for each attorney are likewise reasonable. "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Ramos*, 713 F.2d at 555. Where the prevailing party presents "competent, trustworthy evidence of the market," the district court must award an hourly rate consistent with that evidence." *See Ellis v. University of Kansas Medical* Center, 163 F.3d 1186, 1204 (Tenth Cir. 1998) (internal quotation marks and citation omitted).

"Establishment Clause law is a specialized field," which "require[s] greater than average skill."*Herdahl v. Pontotoc County Sch. Dist.*, 964 F. Supp. 1113, 1119 (N.D. Miss. 1997) (internal quotation marks and citations omitted).  As explained below, the hourly rates proposed here, which range from $125 sought by Mr. Liesenfeld by his own choice to $250 for the work of more veteran attorneys, and $400 for the specialized knowledge and skills of Professor Joe Thai, reflect the years of practice and experience of attorneys who were involved in this case, and are typical of the rates charged by comparable civil-rights attorneys

---

[11](...continued)
[(1st Cir. 1998)].

*Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1077 (10th Cir., 1998).

in Oklahoma.[12]  Goodman Dec. ¶¶ 12-13, 17, 20; Wilkinson Dec. ¶¶ 7, 11, 14, 16 ; Salem

Dec. ¶¶ 35-40.  These rates are also consistent with recent Oklahoma case law.[13]

### (1)    The hourly rate requested for Mr. Salem is reasonable.

---

[12] These rates are well below the market rates that would be commanded by Mr. Mach and Ms. Weaver in Washington D.C.  For example, in Washington D.C., an attorney of Mr. Mach's experience and skills would charge an hourly rate of $575.  Mach Dec.¶ 14.  The Declaration of Randy Calvert (¶¶ 5-10) would support that hourly rate or higher for an attorney in Oklahoma with the skill level of  Professor Thai and would suggest that the rates of Mr. Salem, Mr. Mach, and Ms. Weaver are also below market rate despite extensive experience.

The out of town rate would also be justified by the unpopularity of the case which necessitated the assistance and involvement of attorneys with specific expertise and "special skills" in Establishment Clause litigation.  *See Ramos*, 713 F.2d at 555; Salem Dec. ¶¶ 17-18; Mach Dec. ¶¶ 13, 14-16; *see, e.g.*, *D.H. v. Ponca City Indep. Sch. Dist.*, No. 06-CV-523 CVE-SAJ, 2007 WL 2670105, at * 3 (N.D. Okla. Sept. 7, 2007) ("Plaintiffs' counsel have a very high level of expertise in the very focused area of Title IX litigation . . . . Plaintiffs could not have found the combination of lawyers with that expertise locally."); *Voda v. Cordis Corp.*, No. CIV-03-1512-L, 2006 WL 2570614, at *5 (W.D. Okla. 2006) (noting that patent litigation is a "specialized practice" and rejecting defendants' claim that plaintiff's out-of-state attorney should be limited to the local hourly rate); *see* Mach Dec. ¶¶ 14-15; Goodman Dec.13, 15-16, 20.

[13] The federal courts in Oklahoma have repeatedly approved hourly rates of up to $250 for experienced attorneys claiming compensation for many hours in both civil rights and cases in other areas of the law far less complex and unpopular than this one. *See, e.g.*, *Johnson v. City of Tulsa*, No. 94-CV-39-H (M), 2003 WL 24015152, at *2 (N.D. Okla. Aug. 29, 2003) (finding that a skilled, specialized civil rights attorney can be reasonably entitled to $250 per hour); *see also, e.g.*, *Revocable Trust of Davis v. Kan. City S. Rwy. Co.*, No. CIV-05-331-KEW, 2009 WL 3150409, at *3 (E.D. Okla. Sept. 30, 2009) (approving hourly rates up to $215 in property-damage case); *Valley View Angus Ranch v. Duke Energy Field Servs.*, No. CIV-04-191-D, 2009 WL 2778912, at *2 (W.D. Okla. Aug. 28, 2009) (awarding hourly rate of $250 in property-damage litigation); *Amer. Fidelity Co. Employee Savings Plan v. Haws*, No. CIV-06-848-M, 2008 WL 974705, at *3 (W.D. Okla. Apr. 8, 2008) (finding $240 to be reasonable market rate in an ERISA action); *Lamb. v. Scott's Miracle-Gro Co.*, No. 06-CV-32-JHP, 2008 WL 731234, at *2 (E.D. Okla. Mar. 17, 2008) (approving hourly rate of $250 in connection with Plaintiffs' motion to seek attorneys fees and costs arising from proceedings for motion to compel discovery); *D.H. v. Ponca City Indep. Sch. Dist.*, No. 06-CV-523 CVE-SAJ, 2007 Wl 2670105, at * 3 (N.D. Okla. Sept. 7, 2007) (authorizing $250 per hour in civil rights case); *Okla. Natural Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1255 (N.D. Okla. 2004) (awarding $250 per hour in breach-of-contract case).

Plaintiffs request that the Court award an hourly rate of $250 for Mr. Salem's work, which is the rate he currently charges to clients. (Salem Dec. ¶ 35). *See Ramos*, 713 F. 2d at 555 ("If the lawyer seeking the fee is in private practice, his or her customary rate would be a relevant . . . factor."). Mr. Salem received his J.D. from the University of Oklahoma College of Law in 1975, and also holds a master's degree in public administration and a B.S. in electrical engineering from the University of Oklahoma. (*Id*. ¶ 2). His professional career spans 38 years, and has been largely dedicated to the defense of civil rights and civil liberties. (*Id*. ¶¶ 11-15). In 2012, he was selected as an honorary member of the Order of the Coif by the University of Oklahoma School of Law Chapter. In 2002, he received the Solo Practitioner of the Year Award from the American Bar Association's General Practice, Solo, & Small Firm Section. (*Id*. ¶ 6).

He has successfully litigated several unpopular Establishment Clause actions in the past, as well as various cases involving the First Amendment. (*Id*. ¶¶ 11-14). He acted as lead counsel in this case both in the District Court and on appeal. Mr. Salem's requested rate of $250 is consistent with past fee awards he has received,[14] (*Id*. ¶¶ 36-37), and is reasonable because it represents what lawyers of comparable skill and experience in civil-

---

[14] For example, fifteen years ago, in 1998, Mr. Salem was awarded an hourly rate of $175 for his Establishment Clause work in *Robinson*, which reflected the market rate at the time for an attorney of his skill and experience. *See Robinson*, 160 F.3d at 1279-80. Mr. Salem's additional professional experience and expertise accrued in the interim years easily warrants an increase of this rate to $250 per hour. *See* Salem Dec. ¶¶ 35-39; Goodman Dec.¶¶ 11-13; Wilkinson Dec.¶¶ 13-14.

rights law in this region charge today.[15]  (Goodman Dec.¶¶ 12-13, 15, 17, 20; Wilkinson Dec.¶¶ 7, 11, 14; Salem Dec. ¶ 37).

### (2)   The hourly rate requested for Mr. Mach is reasonable.

Plaintiffs also request that the Court award an hourly rate of $250 for Mr. Mach's work in this case. A former partner at Jenner & Block's Washington, D.C., office, Mr. Mach is a nationally recognized expert in First Amendment and appellate law. (Mach Dec. ¶¶ 4-5, 7). As the Director of the ACLU Program on Freedom of Religion in Belief ("PFRB"), he currently specializes in litigation brought pursuant to the Religion Clauses.[16] (*Id.* ¶ 4). He earned his law degree, *magna cum laude*, from New York University School of Law in 1996 and holds a B.A. from Princeton University, with a concentration in civil rights and civil liberties. (*Id.* ¶ 2). Mr. Mach has extensive experience litigating First Amendment and Establishment Clause cases and has secured a number of important victories in this area. (*Id.* ¶ 4). He has served as an adjunct professor of law at the George Washington University Law School, where he has taught advanced legal drafting and litigation, with an emphasis on public-interest litigation and religion law. In the case at hand, Mr. Mach assisted in reviewing the appellate brief and drafted the supplemental brief. (*Id.* ¶ 28). Mr. Mach's requested hourly rate of $250 is reasonable because it represents what lawyers of comparable skill and

---

[15]  Per the Tenth Circuit, the hourly rate "should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Ramos*, 713 F.2d at 555.  However, as an adjustment for purposes of this fee application, Mr. Salem, Mr. Mach, and Ms. Weaver seek the same hourly rates they sought in 2009 in the *Green v. Haskell County* litigation.

[16]  Salaried public-interest attorneys should be assigned the same hourly rate as an attorney of equal experience and skill at a private firm. *Ramos*, 713 F.2d at 555.

experience in civil rights law in this region charge, reflects his expertise in this very specialized area of litigation, and speaks to the high quality of the legal services he has provided in this case. Goodman Dec. ¶¶ 17, 20; Wilkinson Dec. ¶¶ 15-16.

### (3)     The hourly rate requested for Professor Thai is reasonable.

Plaintiffs also request that the Court award an hourly rate of $400 for Professor Joseph Thai's work in this case. Professor Thai is the Glenn R. Watson Centennial Chair in Law and the President's Associates Presidential Professor at the University of Oklahoma College of Law. He earned his law degree, *cum laude*, from Harvard Law School in 1998 and received an A.B., *summa cum laude*, and Phi Beta Kappa, from Harvard College in 1995. (Thai Dec. ¶¶ 1, 2, 7). He served as a clerk to Judge David Ebel of the United States Court of Appeals for the Tenth Circuit, and to Justices John Paul Stevens and Byron White at the Supreme Court. (*Id*. ¶ 3). He has other litigation experience as an Assistant Attorney General for the Commonwealth of Massachusetts and as an associate for GabelGotwals in Oklahoma City. In 2003 he joined the faculty at the University of Oklahoma School of Law and remains of counsel to GabelGotwals. (*Id*. ¶¶ 4-6).

Professor Thai's academic career includes teaching First Amendment law and Supreme Court Decision Making. He has written and lectured extensively on constitutional law, civil rights, and the Supreme Court. He is a national commentator. (*Id*. ¶ 6).

With such credentials, Professor Thai's customary hourly rate he charges clients is $400/hr. (*Id*. ¶15) (Ragsdale Dec. ¶ 7). Another attorney who engaged Professor Thai considers his hourly rate low based upon the benefit and efficiency of his work and would

judge it to be in excess of $800/hr, a rate he knows is charged by other attorneys in the Oklahoma City area. (Calvert Dec. ¶¶ 5-8, 10).

### (4) The hourly rates requested for Ms. Weaver and Mr. Bhatnager are reasonable.

Plaintiffs request that the Court award an hourly rate of $200 for the work performed by Ms. Weaver and $225 for Mr. Bhatnager.

Ms. Weaver, a staff attorney for ACLU-PFRB, is an expert in Establishment Clause law. As litigation counsel at Americans United for Separation of Church and State, where her practice focused solely on Establishment Clause cases, and in her current position, she has amassed extensive experience litigating Establishment Clause cases at the trial-court and appellate levels, in both federal and state courts. (Weaver Dec. ¶ 4). She received a J.D. from the University of California, Berkeley, Boalt Hall, in 2003, where she served as a notes and comments editor for the California Law Review, and a B.A., *summa cum laude*, from Dickinson College. (*Id*. ¶ 2). Ms. Weaver took the lead in drafting Plaintiffs' severance proposition in Plaintiffs' Motion for Summary Judgment requiring extensive research and collection of the public debate over SQ755. Ms. Weaver significantly participated in the revision and editing of briefs both in this court and on appeal.

Mr. Bhatnagar is a senior staff attorney at the ACLU Human Rights Program (HRP) based in New York. He received his J.D. from the University of Pennsylvania Law School in 2001 and an LL.M. from Columbia University School of Law with a focus on international law and human rights. He received a B.A. from Vassar College in 1996. (Bhatnagar Dec. ¶ 2).

Mr. Bhatnagar's work with HRP includes a range of human rights and international law issues with an emphasis of his practice on the intersection of racial justice and immigration. He leads the HRP's litigation and advocacy efforts with regard to the use of international law and foreign law in U.S. courts and the domestic implementation of the International Convention on the Elimination of All Forms of Racial Discrimination. (*Id.* ¶ 4). He teaches courses on matters relating to international and foreign law in U.S. courts.(*Id.* ¶ 6).

Mr. Bhatnagar's specific work with this case involved legal analysis of SQ755 as to its provisions regarding International Law and foreign law and a review of possible scenarios and effects that could give rise to a constitutional challenge of these provisions.

### (5)    The hourly rates requested for Mr. Abbas and Mr. Liesenfeld are reasonable.

Plaintiffs request that the Court award an hourly rate of $150 for the work performed by Mr. Abbas. Mr. Abbas was a recent law school graduate employed by CAIR. (Abbas Dec. ¶¶ 1-2, 4-5).  He became licensed about the time of the preliminary injunction hearing. (*Id.* ¶ 2). He assisted Mr. Awad, his fellow CAIR employee, in the drafting of the initiating documents in this Court and helped develop successful strategy along with Mr. Awad to challenge the law after it was approved by the voters, but before it was certified by the Defendant Election Board. (*Id.* ¶ 8). His work with CAIR involves investigation of and litigation over the protection of the civil rights of Muslims including First Amendment issues (*Id.* 1, 5-6).

Plaintiffs request that the Court award an hourly rate of $125 for the work performed by Mr. Liesenfeld. He received his J.D., *summa cum laude,* from the Oklahoma City University School of Law in 1996 during the time that he was employed full time as an associate professor in the Department of English at the University of Oklahoma and was the recipient of numerous awards. He received a Ph.D in English from the University of Wisconsin-Madison in 1978 and a B.A. in English, *summa cum laude,* from the University of Minnesota in 1970. During his graduate studies he received a Fulbright Scholarship. He is a member of Phi Beta Kappa and was a Woodrow Wilson Fellow. (Liesenfeld Dec. ¶¶ 1-4).

Mr. Liesenfeld has assisted Micheal Salem as a legal research assistant since 1982. He has been involved in several of Mr. Salem's civil rights and other cases. (*Id*. ¶¶ 8, 11).

The hourly rate requested by Plaintiffs for Liesenfeld is well below market for a person of his experience and skills, but was selected based upon Liesenfeld's personal choice. (*Id*. ¶13).

## III.   PLAINTIFFS' REQUESTED NON-TAXABLE EXPENSES ARE REASONABLE.

Plaintiffs seek reimbursement for certain non-taxable expenses itemized as a part of the Declaration of Micheal Salem. (Salem Dec. ¶¶ 48, 50, 53, Ex. B).

Under Tenth Circuit case law, "[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." *Ramos*, 713 F.2d at 559. Expenses such as law clerks, paralegals, mileage, postage, meals, photocopies, etc. are customarily charged to clients by local

attorneys, *See* Goodman Dec. ¶ 21; Salem Dec. ¶ 48, and thus are properly compensated under Secton 1988(b). *See Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997). Travel by local counsel is generally reimbursable as a non-taxable expense, provided "such costs would normally be billed to a private client." *Id*. at 559. As such costs are routinely billed to clients by area counsel, *see, e.g.*, (Goodman Dec. ¶ 21); (Salem Dec.¶ 48), the Court should award these expenses including travel costs incurred by Mr. Salem during the litigation of this case. See *Bee v. Greaves*, 910 F.2d at 690 ("Because the expenses incurred by . . . [plaintiff's] attorney in traveling to Denver for oral argument are of a type that might be included in an attorney's bill, the court on remand should determine specifically whether such expenses are normally billed to a private client in the local area and, if so, evaluate the reasonableness of the amount.").

## IV. CONCLUSION.

Congress intended *The Fees Act* as a method to promote the enforcement of civil rights. As such, Plaintiffs are the chosen instrument of Congress. Because an "award of fees under Section 1988 gives citizens access to the courts, and enables them to enforce the substantive provisions of the civil rights laws enacted by the United States Congress," *Cooper v. State of Utah*, 894 F.2d 1169, 1171 (10th Cir. 1990), "[i]t goes without saying that if a court's compensation is not adequate . . . [it] would do irreparable damage to our system of private enforcement of federal civil rights." *Robinson*, 160 F.3d at 1281.

A significant attorneys' fee award is particularly important to ensure the continued vindication of Establishment Clause rights because such cases, like this one, are often unpopular among attorneys and potential plaintiffs alike due to the public backlash and

ardent response they often engender. *See* Salem Dec. ¶ 17; Wilkinson Dec. ¶¶ 22-25; *see also, e.g.*, *Am. Atheists, Inc. v. City of Starke*, 509 F.Supp.2d 1221, 1227 (M.D. Fla. 2007) (granting award of additional fees in Establishment Clause challenge to governmental display of Latin cross, in part, because "Counsel agreed to take on an unpopular case"); *Oxford v. Beaumont Indep. Sch. Dist.*, No. CIVA-196-CV-706, 2002 WL 34188379, at *5 (E.D. Tex. Dec. 19, 2002) ("Establishment Clause cases are, by nature, extremely undesirable because, beyond their legal complexity and long duration, they expose Plaintiffs and their counsel to calumny.") (internal quotation marks omitted).

Given the importance of this case and the demonstrated public policy benefits both to Plaintiffs and the State of Oklahoma in striking down this constitutional evil in its entirety, this Court should award the full lodestar amount requested by Plaintiffs.

SIGNATURE OF COUNSEL

Respectfully submitted,

**MICHEAL SALEM** OBA #7876
*Salem Law Offices*
101 East Gray, Suite C
Norman, Oklahoma  73069-7257
(405)  366-1234
Email: msalem@msalemlaw.com

ATTORNEY FOR PLAINTIFFS AWAD, SOLTANI,
ENCHASSI, MOCK, AND SCHWAGMEYER

## CERTIFICATE OF SERVICE

**I hereby certify** that on the 1st day of DECEMBER, 2013, I electronically transmitted this document and additional related support documents to the Clerk of the United States District Court for the Western District of Oklahoma using the ECF System for filing and transmittal of notice of electronic filing to the following ECF registrant:

**Patrick Wyrick**
Solicitor General
Oklahoma Office of the Attorney General

_____
**MICHEAL SALEM**

D:\WP51\SQ755-Islamic Law-WP\Attorney Fees\Motion and Brief\2013-12-01 - SQ755 Attorney Fee Brief-07.wpd